UNITED STATES of America,
Plaintiff–Appellee,

v.

$277,000.00 U.S. CURRENCY; One 1986
Dodge Ram Charger, Jalisco, Mexico
Lic. No. HWY773, Defendants,

and

Ramon S. Montes, Claimant–Appellant.

No. 89–56005.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 8, 1990.

Decided Aug. 8, 1991.

Gerson S. Horn, and William S. Pitman, Beverly Hills, Cal., for claimant-appellant.

Donna R. Eide, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before HUG, CANBY and WIGGINS, Circuit Judges.

HUG, Circuit Judge:

The Government obtained the civil forfeiture of a 1986 Dodge Ram Charger and $277,000 in U.S. currency found in this vehicle, pursuant to 21 U.S.C. § 881 (1988). Claimant Montes appeals on the ground that evidence discovered in the search of the Dodge Ram Charger should have been suppressed because it was obtained in violation of his Fourth Amendment rights. He contends that the police conduct in searching the leased Dodge Ram Charger, which was covered and parked in the backyard of a home, in order to discover the vehicle identification number ("VIN"), was a violation of his Fourth Amendment rights. The $277,000 in currency was discovered in the process and was confiscated when the narcotics-detector dog alerted on the currency. The central issue of the appeal is whether the police have a right to search a parked vehicle to obtain the VIN. Execution of the judgment has been stayed pending this appeal, pursuant to Fed. R.Civ.P. 62(d). We reverse.

### I.

On October 13, 1987 at 11:32 a.m., Montebello Police Department Officers Rodriguez and Gorman responded to a complaint of loud music from a black pickup truck at 484 Via Norte in a Montebello residential area. Because an incorrect address had been given, the officers radioed the command desk to confirm the location and were told the correct residence had two lion statues in front. Officer Rodriguez noticed this description matched the residence at 476 Via Norte. As they approached this residence, they could hear Spanish music from two houses away.

As they got closer, the officers observed that the music was coming from a black pickup truck parked in the driveway of the 476 Via Norte residence. Walking down the driveway, the officers shouted their presence. No one responded or was seen in the front of the property or through an open garage door.

The officers then went to the house. The wrought iron security gate and front door were both ajar. The officers rang the doorbell and knocked several times. Officer Rodriguez repeatedly announced the police presence in Spanish and English. There was no answer. The officers decided to enter the residence through the opened door in order to issue a municipal citation concerning excessive noise coming from a vehicle, pursuant to Montebello Municipal Code § 4223.1. Upon entering the residence, the officers again announced their presence in Spanish and English. No one was discovered inside. In the kitchen, the officers observed an individual outside in the backyard, who was later identified as Rafael Mancillias, age 22, and who was seen closing a door to the garage. Officer Rodriguez was prevented from entering the backyard from the residence by a secured wrought iron door in the rear porch. Mancillias complied with Rodriguez' request to open the door.

While Officer Rodriguez explained the purpose of the police visit to Mancillias, Officer Gorman focused upon two parked vehicles in the backyard which were covered with opaque car covers and had exposed Mexican license plates. The first was a 1986 Dodge Ram Charger, the subject of this appeal, and the second was a 1982 Ford pickup. Officer Gorman noted he was aware that vehicles are often stolen and sold in Mexico. Based upon this suspicion, Officer Gorman raised the car covers on each car to find the place showing the VIN in order to cross-check whether the vehicles had been reported stolen. He reported that the VIN plates were "missing" on both vehicles because they were not visible from the vehicle exterior.

After Officer Gorman informed Officer Rodriguez of the missing VIN on the first vehicle, Rodriguez placed Mancillias in handcuffs and advised him that he was being detained for a grand theft automobile investigation but was not under arrest. The officers then called for the assistance

of two detectives who were members of the Montebello Police Department automobile theft detail.

When Officer Gorman determined that the VIN plates were missing, he decided to impound the vehicles, pursuant to Cal.Veh. Code § 10751, because the VIN was not adequately displayed and for further investigation of automobile theft. Officer Gorman opened the locked Dodge Ram Charger with a "slim-jim" in order to locate the VIN or vehicle registration papers. Inside the Dodge Ram Charger, Officer Gorman checked the glove box, visors and front sections and was unable to find either a VIN or registration papers. In the center of the rear passenger floor board, Officer Gorman noticed a brown shopping bag, which according to the police report, he opened to locate registration information. Gorman discovered $67,650 in U.S. currency inside the bag. Continuing his search, Gorman observed a black leather brief case and black canvas camera bag in the rear of the vehicle, which upon opening also contained $130,000 and $79,760 in U.S. currency, respectively. As a result of the manner of packaging of the large sums of money, Gorman believed the currency may have been used in drug trafficking. Narcotics investigators were summoned to the scene as well as Los Angeles County Sheriff's Deputy T. Lynch, a specialist in automobile theft.

Lynch, who arrived after the vehicle search, examined the vehicle and ultimately found the VIN inside the vehicle. He noted the VIN contained a numbering sequence consistent with vehicles manufactured in Mexico.[1] Subsequently, a narcotics-detector dog alerted on the interior of the vehicle, the money and the three containers. On October 15, 1987, the Montebello Police Department turned over the 1986 Dodge Ram Charger, the U.S. currency and the containers to the U.S. Customs Service.

At the suppression hearing, claimant Montes testified that on February 25, 1987

he entered into a one-year lease agreement in Mexico with the owner of the Dodge Ram Charger and produced a copy of the lease. In October, 1987, Montes parked the vehicle in the backyard of the residence at 476 Via Norte. Montes received permission to park the vehicle in the backyard from Mancillias. Mancillias was not the owner of the house and did not live there but told Montes he was in charge of the house. Montes gave Mancillias a set of keys to the car but did not give him permission to open the vehicle or to drive it.

## II.

The district judge concluded that Montes had no legitimate expectancy of privacy in the residence or the backyard. He found it unnecessary to rule on whether Montes had an expectancy of privacy in the vehicle because of his decision that Montes had no expectancy of privacy in the VIN. He then found that the officers' removal of the opaque cover from the Dodge was not a violation of Montes' Fourth Amendment rights, because he had no expectancy of privacy in the VIN. He concluded that when the officer discovered that the VIN was missing, he had the right to impound the vehicle and that the $277,000 in currency inevitably would have been discovered in the inventory search of the impounded vehicle. The historical facts essential to this appeal are not in question. We are thus reviewing the conclusions of law made by the district court from those facts, which conclusions we review *de novo*.

The claimant contends as follows: (1) the police entry in the residence and the backyard where the vehicles were discovered was unlawful; (2) it was unlawful to remove the cover from the Dodge vehicle without a search warrant or probable cause; (3) it was unlawful for the police to break into the vehicle simply because they could not locate the VIN; (4) even if it had been lawful to break into the vehicle to search for the VIN, that this did not justify opening the shopping bag, the brief case,

---

**1.** Although it is undisputed the VIN was not visible from the vehicle exterior, the record does

not disclose its precise interior location.

and the black canvas camera bag; (5) the inevitable discovery doctrine was misapplied by the court because there was no justification for impounding the vehicle since it had an appropriate VIN attached.

### III.

■ We agree with the district court that Montes did not have a legitimate expectancy of privacy in the residence or the backyard. He had no control whatsoever over the backyard. Thus, he cannot contest the observation of the covered vehicles or the fact that they had Mexican license plates.

■ The Government contends that Montes had no expectancy of privacy in the vehicles because he had turned possession of the vehicles over to Mancillias. This presents a closer question. He gave Mancillias a set of keys to the vehicles but did not give him permission to open or drive them. A person asserting a violation of the Fourth Amendment has the initial burden to establish his right to do so. Thus, Montes had the burden to establish that he had a legitimate expectancy of privacy in the vehicles. *See, e.g., United States v. One Parcel of Land*, 902 F.2d 1443, 1444 (9th Cir.1990) (per curiam); *see also Rakas v. Illinois*, 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978) (motion to suppress proponent has burden to establish violation of Fourth Amendment rights). The Government relies on our opinion in *United States v. One 1977 Mercedes Benz*, 708 F.2d 444 (9th Cir.1983), *cert. denied*, 464 U.S. 1071, 104 S.Ct. 981, 79 L.Ed.2d 217 (1984). In that case, the vehicle was turned over to the exclusive possession of a third-party to drive without safeguarding any privacy interests or restricting the use of the vehicle. Here, Montes was the legitimate lessee of the vehicle; he drove the vehicle into the backyard, covered it with an opaque cover, and gave no permission for Mancillias to open or drive it. This case is more akin to *United States v. Mulligan*, 488 F.2d 732 (9th Cir.1973), *cert. denied*, 417 U.S. 930, 94 S.Ct. 2640, 41 L.Ed.2d 233 (1974), *cited and distinguished in One 1977 Mercedes Benz*, 708 F.2d at 449, n. 4.

In *Mulligan*, we held that the owner of an automobile, which had been parked in the driveway of another for two months, had not relinquished his expectancy of privacy. Montes, as the lessee of the vehicle in this case, like Mulligan, the owner of the vehicle in that case, had not given permission to use the automobile or to enter the automobile. Thus, both here and in *Mulligan* no authorization had been given to invade the privacy within the automobile itself, as had been the case in *One 1977 Mercedes Benz*.

■ We now come to the issue of whether the officers were justified in removing the cover from the Dodge Ram Charger. The justification offered by the Government was that Officer Gorman observed that the vehicles had what appeared to be new Mexican license plates and that, from his experience, he "was aware that trucks and four-wheel drive vehicles are frequently stolen and taken to Mexico and sold." The Government does not even contend that this amounts to probable cause—as indeed it does not. The Government also does not dispute that lifting the opaque covers from the vehicles was a search—as indeed it was. The Government contends that the officers were justified in removing the covers from the vehicles without probable cause to inspect for the VINs.

The Government relies upon *New York v. Class*, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986), a very different case. In *Class*, a motorist was stopped for a traffic violation. He stepped out of the car to discuss the matter with the officer, to show his registration certificate and explain that he did not have a driver's license. The officer went to the car and found that the place where the VIN is supposed to be located (on the left-hand side of the dashboard, inside the windshield) was covered by a paper on the dashboard. He entered the car to remove the paper so he could examine the VIN and saw a gun under the seat. The Supreme Court held that this was a search but that "this search was sufficiently unintrusive to be constitutionally permissible in light of the lack of a reasonable expectation of privacy in the

VIN and the fact that the officers observed respondent commit two traffic violations." *Id.* at 119, 106 S.Ct. at 968. In reaching that conclusion, the Supreme Court noted "here, where the object at issue is an identification number behind the transparent windshield of an automobile driven upon the public roads, we believe that the placement of the obscuring papers was insufficient to create a privacy interest in the VIN. The mere viewing of the formally obscured VIN was not, therefore, a violation of the Fourth Amendment." *Id.* at 114, 106 S.Ct. at 966.

In the case at hand, the vehicles were not being driven on the roads; they were parked in a backyard. The occasion for the inspection was not brought about by traffic violations; it was merely the discovery of two vehicles with Mexican license plates parked in a backyard. The factors carefully balanced in the *Class* opinion, such as the necessity of vehicle regulation on the public highways, officer safety and the minimal intrusion involved by removing a paper from the dashboard of a vehicle already stopped for traffic violations, are simply inapplicable here. Surely the careful balancing revealed in the *Class* opinion is not to be extended so as to permit a search of any parked vehicle without probable cause just because the VIN is obscured in some way.

■ The California statute concerning the VINs at issue in this case does not require that the VIN be displayed at all times in open view, but rather the requirement is that "no person shall knowingly buy, sell, offer for sale, receive, or have in his possession any vehicle or component part thereof from which the manufacturer's serial or identification number has been removed, defaced, altered or destroyed...." California Vehicle Code § 10751(a). It is a far cry from the minimum intrusion of an inspection in conjunction with a traffic stop to the intrusion involved by removing car covers or break-

ing into parked cars to determine whether the VIN may have been "removed, defaced, altered or destroyed," merely because the VIN is not in plain sight. This is especially true when the statute does not even require the VIN to be unobstructed; it requires only that it not be "removed, defaced, altered or destroyed."

To create a precedent whereby the police may uncover or enter a car at any time to inspect the VIN would permit the police to rove the streets, to remove car covers, or break into any automobiles where the VIN number is obscured in some way. In this case, the removal of the car cover without probable cause was an unlawful search.[2] Such a precedent would be equally applicable to a car that was not covered but where the location of the VIN was obscured in some other way. Thus, if a car owner happens to have a sun deflector on the windshield or a paper covering the VIN in his or her parked car, police would be authorized, without any probable cause, to break into the car merely to determine whether the VIN has been "removed, defaced, altered or destroyed." The language of the *Class* opinion does not lend itself to such an intrusive extension. Because we find the search of the vehicle to have been unlawful, we need not reach the remaining contentions of the claimant.

### IV.

■ Removal of the cover of the vehicle having been a search in violation of the Fourth Amendment, the evidence, which is the product of that search, must be excluded at trial. As we noted in *One 1977 Mercedes Benz,* the mere fact that property was illegally seized does not immunize that property from forfeiture; however, any evidence which is the product of an illegal search or seizure must be excluded in the forfeiture hearing. The Government must satisfy forfeiture requirements with untainted evidence. 708 F.2d at 450.

REVERSED.

---

**2.** Because probable cause did not exist, we do not reach the question of whether a search warrant would be required if there were proba-

ble cause or whether the automobile exception would permit the search without a warrant.

WIGGINS, Circuit Judge, dissenting:

I agree with the majority that Montes had no legitimate expectation of privacy in the residence or the backyard. I also agree that he did have a legitimate expectation of privacy in the vehicles and, therefore, that he has standing to contest the officers' conduct regarding them. I disagree that lifting the vehicle cover to observe the VIN was an unreasonable search in the circumstances in this case, and so I dissent.

Because of the extensive regulation of automobiles and the importance of the VIN to that system of regulation,[1] the Supreme Court has held that there is "no reasonable expectation of privacy in the VIN." *New York v. Class*, 475 U.S. 106, 114, 106 S.Ct. 960, 966, 89 L.Ed.2d 81 (1986). Further, purposefully or inadvertently obscuring the VIN from ordinary view to someone outside the vehicle does not create a privacy interest in the VIN. *Id.* Nevertheless, the Court recognized in *Class* that vehicle owners do have some expectation of privacy in the interior of their vehicles, where the VIN is usually located, although that interest is not as weighty as the interest in the privacy of one's home, for example. *See id.* at 112–13, 106 S.Ct. at 965.

In *Class*, a police officer had reached into the interior of a car that had been stopped for traffic violations to remove some papers on the dashboard that covered the VIN. In considering whether the invasion was reasonable, the Court discussed the officers' safety, the minimal nature of the intrusion, the fact that the officers had observed the driver commit two traffic violations, and the driver's lack of a privacy interest in the VIN. The Court held that given all these considerations, the officer's intrusion into the interior of the car, without the owner's consent, to move the obscuring papers was reasonable and did not violate the Fourth Amendment. *Id.* at 116–19, 106 S.Ct. at 967–69.

Following the example of *Class*, we should balance all the concerns at issue in this case in deciding whether Officer Gorman's actions were reasonable under the Fourth Amendment. Officer Gorman was confronted with something out of the ordinary—two covered vehicles with Mexican license plates located in a backyard. Although these facts certainly do not amount to probable cause that a crime has been committed, I believe they do justify minimally intrusive efforts by a police officer to observe the VIN. The fact that these were parked vehicles in a backyard, not vehicles being driven on the open road, as in *Class*, does not render inapplicable the regulations that preclude an owner's privacy interest in the VIN. An important purpose of these regulations, and of the VIN—to establish ownership—has nothing to do with whether the vehicle is being driven on the public roads or not. Consequently, I would hold that, like the dashboard papers in *Class*, the placement of a cover over a parked vehicle is insufficient to create a privacy interest in the VIN.

As placing a cover over a vehicle does not create a privacy interest in the VIN, neither does it negate the owner's privacy interest in the interior of the vehicle. The intrusion, lifting the cover, must be reasonable. However, lifting a vehicle cover in order to observe the VIN from the outside is not significantly more intrusive than reaching into the interior of a vehicle, as was approved in *Class*. Considering all the circumstances of this case, covered vehicles with Mexican license plates parked in a backyard, the minimal intrusion of lifting a vehicle cover to observe the VIN, and Montes' lack of a privacy interest in the VIN as a general matter, I would hold that Officer Gorman's action in lifting the cover was reasonable and did not violate the Fourth Amendment.

I recognize that my holding would allow an officer to lift a vehicle cover in order to view the VIN on nothing more than a hunch, as in this case. I believe that the Supreme Court already has sanctioned

---

**1.** For example, the California law involved in this case requires that the VIN not be "removed, defaced, altered or destroyed...." California Vehicle Code § 10751(a). Federal law requires that the VIN be placed so that it is readable to one standing outside the vehicle. 49 CFR § 571.115(S4.6).

such a holding in *Class*. The officer in *Class* had little reason to be concerned about the ownership of a vehicle he had stopped for a speeding violation and a cracked windshield. *See* 475 U.S. at 108, 106 S.Ct. at 962–63. Nevertheless, checking the VIN was within the scope of his duty while investigating those minor violations. I believe that checking the VIN in this case was likewise within the scope of Officer Gorman's duty to investigate something unusual that had mildly aroused his suspicions about vehicle ownership.

I do not suggest that any greater intrusion was within the scope of his duty based on those suspicions alone, nor do I think that this holding would create the broad precedent or lead to the general lawlessness suggested by the majority: "To create a precedent whereby the police may uncover *or enter* a car at any time to inspect the VIN would permit the police to *rove the streets*, to remove car covers, *or break into* any automobiles where the VIN number is obscured in some way" (emphasis added). My conclusion that lifting the vehicle cover in order to see the VIN was reasonable says nothing about breaking into or entering any car in which the VIN is not visible from the outside. Those are not the facts of this case and judgment on them is better left for another day.

My conclusion does not end the inquiry in this case, however. *Class* does not address what an officer may do when he or she discovers that the VIN is not located where the law requires. California law allows an officer to take a vehicle into custody, if the officer believes that the VIN has been unlawfully removed. Cal.Veh.Code § 10751. As the majority acknowledges, Officer Gorman impounded the vehicles pursuant to § 10751 when he discovered that the VIN was not where the law requires.[2]

The Supreme Court has acknowledged that when a vehicle is rightfully within police custody, as here, an inventory search of the vehicle's contents pursuant to standard procedures is not a search requiring a warrant or probable cause. *South Dakota v. Opperman*, 428 U.S. 364, 375–76, 96 S.Ct. 3092, 3100–01, 49 L.Ed.2d 1000 (1976). I would hold that Officer Gorman's entry into the vehicles and his search of their contents was an inventory search, conducted to ascertain, if possible, who owned the vehicles that were then properly within his custody. That he did not wait until he had towed the vehicles to the impounding lot, or until he had a standard inventory form to fill out, does not make his actions significantly different from the inventory search approved by the Court in *Opperman*. *Id.* Officer Gorman's action was not a "pretext to concealing an investigatory police motive," which the Court has warned against. *Opperman*, 428 U.S. at 376, 96 S.Ct. at 3100. He was not looking for contraband or the fruits of any crime. He was simply looking for the VIN or registration papers in order to establish ownership conclusively, if possible.[3]

Because, in the circumstances of this case, lifting the vehicle cover in order to observe the VIN was reasonable, and because the entry and search of the vehicle's contents, after discovering that the VIN was not where the law required, was a proper inventory search conducted to ascertain the vehicle's owner, I would affirm the district court's denial of Montes' motion to suppress the evidence discovered in the search.

---

**2.** The fact that another officer, an expert in stolen cars, later found the VIN and determined that it had a numbering sequence consistent with vehicles manufactured in Mexico, does not affect Officer Gorman's good faith belief that the VIN was not where it was supposed to be. Likewise, it does not affect the legitimacy of the impoundment based on that belief.

**3.** Officer Gorman did suspect that the vehicles might be stolen, but his responsibility to establish the ownership of the vehicles in his custody exists with or without a suspicion that the vehicles might be stolen. Further, that a vehicle might be stolen is a possibility whenever the VIN is not where it should be. Therefore, his suspicion should not affect the result here.