166 P.3d 111

**STATE of Arizona, Appellant,**

v.

**Bryan ALLEN, Appellee.**

No. 1 CA–CR 06–0689.

Court of Appeals of Arizona, Division 1, Department D.

Aug. 23, 2007.

Andrew P. Thomas, Maricopa County Attorney By Diane Gunnels Rowley, Deputy County Attorney, Phoenix, Attorneys for Appellant.

Law Office of David Michael Cantor, PC, By Todd E. Nolan, James C. Harberson III, Tempe, Attorneys for Appellee.

## OPINION

HALL, Judge.

¶ 1 As part of the investigation of a fatal hit and run car-pedestrian accident, a police officer checked surrounding neighborhoods looking for the vehicle that fled the scene. Driving through an apartment complex, the officer noticed a vehicle partially draped with a cloth car cover that may have met the description of the car for which he was looking. He then lifted the cover and discovered damage to the front and passenger side of the vehicle. Bryan Allen, the owner of the vehicle, was subsequently charged with leaving the scene of an accident. Allen moved to suppress the evidence of damage to his vehicle and incriminating statements he made to the police as fruit of an illegal search. The

trial court granted the motion. For reasons that follow, we reverse.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In reviewing a trial court's decision on a motion to suppress, we view the facts in the light most favorable to upholding the trial court's ruling and consider only the evidence presented at the suppression hearing. *State v. Wyman*, 197 Ariz. 10, 12, ¶ 2, 3 P.3d 392, 394 (App.2000).

¶ 3 Shortly after midnight on October 22, 2005, Daniel S. was stopped at a red light at the intersection of Apache Boulevard and McClintock Drive in Tempe. While waiting for the light to change, he observed a red sports car approaching northbound on McClintock at a speed he estimated at eighty miles per hour. When the car reached the crest of the intersection, it became airborne for a short distance, struck the pavement, bounced into the air again, and continued northbound on McClintock. As the car left his view, Daniel S. heard a thud from the direction in which the car was heading and saw something fly through the air.

¶ 4 After the traffic light changed, Daniel S. drove to the area where the thud occurred. Approximately 200 feet north of the intersection, he discovered a body on the sidewalk and called 911. When Tempe Police Sergeant John Butler arrived on the scene, Daniel S. informed the officer what he saw and identified the vehicle as a red Mitsubishi 3000 GT two-door sport coupe.[1] The officer also observed substantial debris in the roadway, including "small red parts of an automobile."

¶ 5 Sergeant Butler remained at the scene until he was relieved by the vehicular crime sergeant at around 3:30 a.m. He thereafter "took it upon [him]self" to check the surrounding neighborhoods for the car involved in the collision. During his search, Sergeant Butler drove through various apartment complexes in the area looking for red sports cars. He knew from the debris and blood at the scene that the damage to the vehicle involved in the collision would be significant.

There were numerous red vehicles in the area, and the officer sometimes stopped to look at particular ones.

¶ 6 Sergeant Butler eventually came to an apartment complex on East Hayden Lane that has an open lighted parking lot that wraps around the outside of the apartment building. As he entered the lot, Sergeant Butler observed two red cars parked side by side in an area of the lot with covered parking. The second of the two cars was partially covered with an elastic-banded gray opaque tarp. The car cover left the bottom twelve to fifteen inches of the vehicle exposed, and Sergeant Butler observed that the vehicle was a red two-door sport coupe.

¶ 7 Although Sergeant Butler could not observe damage to the car with the cover in place, there were things that made him suspicious of the vehicle. In addition to being the only car in the lot with a car cover, he noted that the seat belt was hanging out on the passenger side with the door closed on it. Sergeant Butler peeled back a portion of the cover at the front of the vehicle and saw extensive damage to the right headlamp assembly. Raising the cover further on the passenger side, he observed additional damage to the front passenger side window and roof. He then lifted the cover at the back of the car to obtain the license plate number. Based on the plate number, Sergeant Butler was able to identify Allen as the owner of the vehicle and contact him regarding the collision.

¶ 8 Allen was subsequently indicted for leaving the scene of an accident involving death. Before trial, Allen moved to suppress the evidence of the damage to his car and statements he made to the police, claiming they were obtained as a result of an unlawful search in violation of his rights under the Fourth Amendment to the United States Constitution and Article 2, Sections 4 and 8, of the Arizona Constitution. Following an evidentiary hearing, the trial court granted the motion. At the request of the State, the trial court dismissed the charge against Allen without prejudice. The State then commenced this appeal. We have jurisdiction

---

1. The witness explained that he was able to provide a specific identification of the vehicle make and model because he previously worked at an automotive body shop.

pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12–120.21(A)(1) (2003), 13–4031 (2001) and 13–4032(6) (2001).

## DISCUSSION

■ ¶ 9 The Fourth Amendment of the United States Constitution and Article 2, Section 8, of the Arizona Constitution protect against unreasonable searches and seizures. When a violation of the Fourth Amendment or its state counterpart is determined to have occurred, the exclusionary rule generally requires the suppression at trial of any evidence directly or indirectly gained as a result of the violation. *State v. Schinzel,* 202 Ariz. 375, 382, ¶ 28, 45 P.3d 1224, 1231 (App.2002).

¶ 10 In challenging the evidence obtained as a result of Sergeant Butler's lifting the car cover to inspect his vehicle, Allen argued, and the trial court agreed, that the evidence of the damage to the vehicle and his subsequent statements to the police must be suppressed because the officer conducted an unlawful search. Specifically, the trial court found that Allen met his burden of proving both a subjectively and an objectively reasonable expectation of privacy when he covered his car and that the officer's actions in lifting the car cover without probable cause [2] constituted an illegal search in violation of both the United States and Arizona Constitutions.

■ ¶ 11 The State contends that the trial court erred in granting the motion to suppress because the lifting of the car cover did not constitute a "search" because Allen had no reasonable expectation of privacy in the exterior of his vehicle. In the alternative, the State invites us to hold that even if the lifting of the car cover was a "search," any intrusion was de minimis and outweighed by the importance of the governmental interest justifying the intrusion, rendering it constitutionally permissible. We review a ruling on the motion to suppress for an abuse of discretion if it involves a discretionary issue, but review constitutional and purely legal issues

de novo. *State v. Booker,* 212 Ariz. 502, 504, ¶ 10, 135 P.3d 57, 59 (App.2006).

¶ 12 The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things seized." Its corollary in the Arizona Constitution, Article 2, Section 8, states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law."

■ ¶ 13 A "search" under the Fourth Amendment occurs "when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). The protection provided by the Fourth Amendment encompasses private information rather than formal definitions of property. *Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). To have a *legitimate* expectation of privacy protected by the Fourth Amendment, a person must show both an "actual (subjective) expectation of privacy" and that the expectation is one that society is prepared to recognize as "justifiable" under the circumstances. *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (quoting *Katz,* 389 U.S. at 353, 88 S.Ct. 507); *see also California v. Greenwood,* 486 U.S. 35, 39, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988) (holding Fourth Amendment protects only a "subjective expectation of privacy ... that society accepts as objectively reasonable"). Thus, if the actions by Sergeant Butler did not intrude upon Allen's legitimate expectation of privacy, there was no "search" subject to the Warrant Clause. *See Illinois v. Andreas,* 463 U.S. 765, 771, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983).

■ ¶ 14 Although there was no testimony presented at the evidentiary hearing regarding how Allen's car came to be covered, we

2. The State did not argue that the officer had probable cause. Instead, the State contended that the officer's actions did not constitute a

search and, even if it was a search, it fell within the exigent circumstances exception.

assume that Allen placed the car cover over the vehicle for the purpose of hiding the damage that resulted from the collision. Accordingly, there was no abuse of discretion by the trial court in finding that Allen had a subjective expectation of privacy in the portion of the vehicle that he covered.

¶ 15 However, the fact that Allen sought to hide the damage to his vehicle by using a car cover does not determine whether he had an objectively legitimate expectation of privacy in the exterior appearance of his car. "The test of legitimacy is not whether the individual chooses to conceal assertedly 'private' activity," but instead "whether the government[al] intrusion infringes upon the personal and societal values protected by the Fourth Amendment." *Oliver v. United States,* 466 U.S. 170, 182–83, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984); *see also New York v. Class,* 475 U.S. 106, 114, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986) ("We have recently emphasized that efforts to restrict access to an area do not generate a reasonable expectation of privacy where none would otherwise exist."). Whether a particular expectation of privacy is recognized by society as objectively reasonable is a matter of constitutional law that we consider de novo. *State v. Adams,* 197 Ariz. 569, 572, ¶ 16, 5 P.3d 903, 906 (App. 2000).

¶ 16 The United States Supreme Court has never held that there is a reasonable expectation of privacy in the exterior of a vehicle. To the contrary, in *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), a plurality of the Court, after noting that "insofar as Fourth Amendment protection extends to a motor vehicle, it is the right to privacy that is the touchstone of our inquiry[,]" *id.* at 591, 94 S.Ct. 2464, held that "the examination of [a] tire . . . and the taking of paint scrapings from the exterior of [a] vehicle" do not implicate any cognizable Fourth Amendment privacy interest. *Id.* The plurality reasoned that no reasonable expectation existed in the exterior of an automobile because an automobile "seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and contents

are in plain sight." *Id.* at 590. In concluding that no Fourth Amendment violation occurred, the plurality stated:

In the present case, nothing from the interior of the car and no personal effects, which the Fourth Amendment traditionally has been deemed to protect, were searched or seized and introduced in evidence. With the "search" limited to the examination of the tire on the wheel and the taking of paint scrapings from the exterior of the vehicle left in the public parking lot, we fail to comprehend what expectation of privacy was infringed. Stated simply, the invasion of privacy, "if it can be said to exist, is abstract and theoretical."

*Id.* at 591–92, 94 S.Ct. 2464 (citation and footnotes omitted).

¶ 17 Twelve years later, in *New York v. Class,* a majority of the Court expressly endorsed the *Cardwell* plurality's conclusion that an examination of the exterior of a vehicle "does not constitute a [Fourth Amendment] 'search'" because the exterior of a vehicle "is thrust into the public eye." 475 U.S. at 114, 106 S.Ct. 960. In explaining that a motorist stopped for traffic violations does not have a constitutionally protected privacy interest in a VIN located in the interior of the vehicle on the dashboard but obscured from view by papers, the Court observed that the "VIN's mandated visibility makes it more similar to the exterior of the car than to the trunk or glove compartment." *Id.* Thus, the court concluded, it was only when an officer actually reached into the interior of the vehicle to move papers that obstructed the VIN that a search under the Fourth Amendment occurred. *Id.* at 114–15, 106 S.Ct. 960. The Court went on to find that the search was not "unreasonable" under the Fourth Amendment because it was "no more intrusive than necessary" to fulfill the lawful objective of viewing the VIN. *Id.* at 118–19, 106 S.Ct. 960.

¶ 18 In the present case, Allen's car was parked in a location accessible to the public. No claim is made that Sergeant Butler did not have the right or authority to be in the parking lot or that his presence there, by itself, invaded or otherwise infringed on Allen's right of privacy. The record does not

reveal that the car cover was locked in place; to the contrary, from the description in the record, the cover was of the sort that easily could be raised (or removed) by a passer-by. In lifting the car cover, the only thing that the officer exposed to his view was the exterior of the vehicle. No entry was made into the vehicle, nothing was taken from the vehicle, and no damage was done to the vehicle. The officer merely viewed its exterior. Under these circumstances, the lifting of the car cover did not infringe upon any reasonable expectation of privacy that Allen had with respect to his vehicle.[3] *See State v. Ball*, 219 N.J.Super. 501, 530 A.2d 833, 835 (App.Div. 1987) (holding removal of blanket covering hoodless pickup truck's engine not a search within the meaning of Fourth Amendment).

¶ 19 In arguing that he had a reasonable expectation of privacy in the exterior of his vehicle, Allen relies primarily on *United States v. $277,000 United States Currency*, 941 F.2d 898 (9th Cir.1991). This decision was also cited by the trial court as the basis of its ruling granting the motion to suppress. In *$277,000 United States Currency*, the Ninth Circuit held that the police performed a search by removing a tarp covering a truck parked in the backyard of a residence. The police were in the backyard of the home investigating a complaint of loud music. *Id.* at 899. After being admitted to the backyard, one of the officers proceeded to lift tarps that covered two parked vehicles to check the VIN on each vehicle. *Id.* The officer had noted Mexican license plates on the vehicles and he was aware that sometimes stolen American cars were sold in Mexico. *Id.* Based on that rationale alone, the officer decided to check the VIN. When he could not find a VIN from the exterior of one of the vehicles, he opened the locked vehicle in order to locate the VIN and discovered a large amount of cash, which became the subject of the forfeiture action. *Id.* at 899–900.

¶ 20 In suppressing the evidence found in the truck, the Ninth Circuit held that the owner of the truck in question had no legitimate expectation of privacy in the backyard because he was not the owner of the residence, but did have a reasonable expectation of privacy in the truck. *Id.* at 901. Therefore, the police were not justified in removing the cover from the truck or entering the vehicle to inspect for the VIN, and doing so constituted a search in violation of the Fourth Amendment. *Id.*

¶ 21 We are not persuaded that the Ninth Circuit's decision in *$277,000 United States Currency* compels the conclusion that the lifting of a car cover necessarily constitutes a "search" for purposes of the Fourth Amendment.[4] The government did not argue in *$277,000 United States Currency* that the officer's action in looking under the cover did not constitute a search, and the Ninth Circuit simply concluded that it was without any analysis or citation to authority. *Id.* Furthermore, in finding that the officer's conduct could not be justified, the court implied that the lifting of a car cover was the equivalent of breaking into the interior of a vehicle. *Id.* at 902. In making this analogy, the court did not consider the distinction recognized in the law between viewing the exterior of a vehicle and physically entering the vehicle.

¶ 22 We also note that *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), is distinguishable. In *Hicks*, the Court held that an officer's movement of stereo equipment to view serial numbers constituted a search. *Id.* at 325, 107 S.Ct. 1149. In that case, however, officers entered an apartment based on the "exigent circumstance" of the discharge of a weapon within the apartment. Consequently, a search was clearly involved because the officers intruded

---

**3.** Even though the touching of the cover could be considered a technical trespass at common law, a property interest does not in itself determine the legitimacy of privacy rights protected under the Fourth Amendment. *Oliver*, 466 U.S. at 183, 104 S.Ct. 1735.

**4.** Arizona state courts are not bound by the Ninth Circuit's interpretation of federal constitutional protections. *See, e.g., State v. Montano*, 206 Ariz. 296, 297, 77 P.3d 1246, 1247 (2003) (declining to follow a Ninth Circuit decision that a trial judge's imposition of the death penalty in violation of *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), could not be subject to harmless error analysis).

into an area in which the defendant had a reasonable expectation of privacy. By further moving the stereo equipment, the officers expanded the warrantless search beyond the scope justified by the exigent circumstances on which their initial entry was based. *Id.*

¶ 23 In contrast, Sergeant Butler's presence in the apartment parking lot did not constitute a search as it was not an area in which Allen had any right to privacy. *See United States v. Cruz Pagan,* 537 F.2d 554, 558 (1st Cir.1976) (holding no reasonable expectation of privacy in well-traveled common area such as garage of multi-unit apartment house). The lifting of the car cover to view the exterior of the vehicle likewise did not invade any reasonable expectation of privacy. *See Ball, supra; see also Oliver,* 466 U.S. at 183 n. 13, 104 S.Ct. 1735 ("Certainly the Framers did not intend that the Fourth Amendment should shelter criminal activity whenever persons with criminal intent choose to erect barriers[.]"). Accordingly, we hold that the trial court erred in ruling that the action by the officer in lifting the car cover constituted an unlawful search under the Fourth Amendment.

■ ¶ 24 Even if we were to assume that Sergeant Butler's actions amounted to a search, the Fourth Amendment only proscribes searches that are "unreasonable." "The touchstone of the Fourth Amendment is reasonableness." *United States v. Knights,* 534 U.S. 112, 118, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001). Thus, even though the Fourth Amendment demonstrates a "strong preference for searches conducted pursuant to a warrant" backed by probable cause, *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court has applied a reasonableness standard in reviewing warrantless searches or seizures in a variety of circumstances.[5] *See United States v. $109,179 in United States Currency,* 228 F.3d 1080, 1087 (9th Cir.2000) (observing that "even if the challenged action triggers the protections of the Fourth Amendment, a minimally intrusive action may be reasonable in view of the government interests it serves") (internal quotations omitted).

¶ 25 In determining whether a search was reasonable, we examine the totality of the circumstances and balance the degree to which the search intrudes upon an individual's privacy against the degree to which it is needed for the promotion of legitimate governmental interests. *Knights,* 534 U.S. at 118–19, 122 S.Ct. 587. In applying these considerations here, Allen had a very limited privacy interest, if any, in shielding the exterior appearance of his car from public view. From the perspective of the governmental interests involved, Sergeant Butler was engaged in the legitimate function of investigating a fatal hit-and-run accident hours after its occurrence by checking for suspect vehicles in the surrounding area. As he entered the apartment complex parking lot, he knew he was looking for a red Mitsubishi 3000 GT two-door sport coupe that had sustained substantial damage from colliding with the victim. He observed a red two-door sport coupe that was partially draped with a cloth car cover. By lifting a portion of the car cover, he was able to observe extensive damage to the right front side of the vehicle. He also lifted the back portion of the car cover to obtain a license plate number, which enabled him to identify Allen as the owner and obtain his address.

¶ 26 Under these circumstances, Sergeant Butler's actions were reasonable under the Fourth Amendment. Unlike *$277,000 United States Currency,* in which officers responding to a noise complaint acted on a

5. *See, e.g., Samson v. California,* 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006) (parolee search); *United States v. Knights,* 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) (probation search); *Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) (seizure of car passenger); *National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) (drug-testing programs); *United States v. Montoya de Hernandez,* 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985) (bor-

der searches); *New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (school searches); *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (inventory searches); *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (searches incident to arrest); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (stop and frisk); *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (administrative searches).

hunch in searching the vehicles in the backyard of a residence, Sergeant Butler was investigating a serious crime shortly after its occurrence and possessed at least some level of individualized suspicion that Allen's car might be the hit-and-run vehicle. *See Petersen v. City of Mesa*, 207 Ariz. 35, 38, ¶ 10, 83 P.3d 35, 38 (2004) ("To be reasonable, a search generally must be based upon some level of individualized suspicion of wrongdoing.").

¶ 27 In summary, the officer's lifting of the cover was a minimal intrusion that did not seriously infringe on any objectively reasonable privacy interest that Allen had in the exterior appearance of his car. *See $109,179 in United States Currency*, 228 F.3d at 1088 (concluding that insertion of key into a car door lock for the purpose of ascertaining whether car belonged to claimant "was not an unreasonable search prohibited by the Fourth Amendment"); *cf. Class*, 475 U.S. at 119, 106 S.Ct. 960 (holding that entry into vehicle to locate the VIN, although a search, was "sufficiently unintrusive to be constitutionally permissible").

¶ 28 In addition to finding a Fourth Amendment violation, the trial court ruled that the officer's actions in lifting the car cover violated the privacy protections provided by the Arizona Constitution. Our supreme court has held that Article 2, Section 8, of the Arizona Constitution provides greater privacy rights for a person's home than the Fourth Amendment. *See, e.g., State v. Bolt*, 142 Ariz. 260, 264–65, 689 P.2d 519, 523–24 (1984) (holding that police officers' warrantless entry of defendant's home in the absence of exigent circumstances to "secure" the residence until a search warrant could be obtained violated Article 2, Section 8). This holding, however, has not been extended to provide greater protections to a person's automobile. *State v. Reyna*, 205 Ariz. 374, 377 n. 5, 71 P.3d 366, 369 n. 5 (App.2003). Given our conclusion that Sergeant Butler's lifting of the car cover was not a "search" under the Fourth Amendment or that, if it was a search, it was not an "unreasonable" search, the lifting of the car cover likewise did not violate any privacy rights under Article 2, Section 8, of the Arizona Constitution.

## CONCLUSION

¶ 29 Sergeant Butler did not perform a "search" by violating a constitutionally protected reasonable expectation of privacy when he lifted the car cover and viewed the exterior of Allen's car that was parked in an area to which the public had access. Even if the officer's actions constituted a search, he nonetheless acted reasonably under the circumstances and the extent of his intrusion into any legitimate right of privacy possessed by Allen was minimal. Therefore, the search was not prohibited under the Fourth Amendment as "unreasonable." Accordingly, we reverse the trial court's order of suppression.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge and LAWRENCE F. WINTHROP, Judge.

