FILED BY CLERK

FEB 10 2010

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2009-0078 |
| Appellant, | ) | DEPARTMENT A |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| ALEXANDER JOEL HUERTA, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20081516

Honorable Deborah Bernini, Judge

REVERSED

Barbara LaWall, Pima County Attorney
 By Jacob R. Lines and Amy S. Ruskin                                      Tucson
                                                      Attorneys for Appellant

David Alan Darby                                                         Tucson
                                                       Attorney for Appellee

E S P I N O S A, Presiding Judge.

¶1          After the trial court granted Alexander Huerta's motion to suppress all

evidence related to a sheriff's deputy's discovery of cocaine in an unclaimed duffle bag,

the state dismissed all pending charges against Huerta and now appeals the trial court's suppression ruling. Finding no illegal search occurred, we reverse.

## Factual and Procedural History

¶2　　　　We review the facts in the light most favorable to upholding a trial court's ruling on a motion to suppress. *State v. Teagle*, 217 Ariz. 17, ¶ 2, 170 P.3d 266, 269 (App. 2007). The following facts are undisputed. In April 2008, Huerta and his son were outside their home loading items into Huerta's pickup truck when two men in a sport-utility vehicle (SUV) approached and began shouting and firing guns at them. Huerta produced his own weapon, returned fire, and the SUV sped away. Not seeing his son and fearing he had been kidnapped, Huerta chased the SUV in his truck, spilling items from the bed of the truck onto the roadway.

¶3　　　　A Pima County sheriff's deputy responding to reports of gunfire arrived at a location near Huerta's home and found people attempting to clear the road. He directed them to stop and then picked up several items lying in the street. After the deputy had moved the items to the sidewalk, Huerta returned to the scene and described what had happened. He appeared nervous and initially declined to identify any of the property, indicating he was too worried about his son to think about it. After learning his son was at a neighbor's house, Huerta was again asked about the property and he claimed everything except a duffle bag. When Huerta was specifically asked about the bag, he

neither admitted nor denied owning it.[1]  The deputy subsequently unzipped the bag and discovered several wrapped "blocks" of cocaine.  Huerta was arrested and officers obtained a search warrant for his home and vehicle.  Following a pretrial hearing, the trial court granted Huerta's motion to suppress all evidence acquired as a result of the deputy's opening the duffle bag and the state voluntarily dismissed the charges to seek appellate review of that ruling.  We have jurisdiction over the state's appeal pursuant to A.R.S. § 13-4032(6).

## Discussion

**¶4**       The state contends the trial court erred in suppressing the evidence obtained as a result of the search of the duffle bag, arguing it had been abandoned and Huerta retained no privacy interest in its contents.  Neither the state nor Huerta has cited any controlling authority relating to the specific circumstances presented here, and we have found none.  Accordingly, we find this a matter of first impression in Arizona.  In reviewing a trial court's ruling on a motion to suppress evidence, we evaluate discretionary issues for an abuse of discretion but review legal and constitutional issues de novo.  *State v. Allen*, 216 Ariz. 320, ¶ 11, 166 P.3d 111, 114 (App. 2007).  Whether a defendant has abandoned property is a factual determination, *see State v. Rogers*, 186 Ariz. 508, 511, 924 P.2d 1027, 1030 (1996), that we review for clear and manifest error,

---

[1]At the hearing on Huerta's motion to suppress, the arresting officer initially testified that when asked, Huerta indicated the duffle bag was not his.  On cross-examination, he clarified that Huerta "was silent about" the bag and did not affirmatively say whether it was or was not his.

*see State v. Dean*, 206 Ariz. 158, ¶ 9, 76 P.3d 429, 432 (2003). Whether a particular expectation of privacy is recognized under constitutional law is reviewed *de novo*. *Allen* 216 Ariz. 320 ¶ 15, 166 P.3d at 115.

¶5 Both the United States and Arizona Constitutions forbid unreasonable searches and seizures, U.S. Const. amends. IV and XIV; Ariz. Const. art. II, § 8, and warrantless searches are "per se unreasonable," *Katz v. United States*, 389 U.S. 347, 357 (1967); *see also State v. DeWitt*, 184 Ariz. 464, 468, 910 P.2d 9, 13 (1996). A person retains no privacy interest, however, in abandoned property and may not invoke the exclusionary rule for evidence uncovered as the result of its search. *See State v. Huffman*, 169 Ariz. 465, 466-67, 820 P.2d 329, 330-31 (App. 1991). A court will find that property has been abandoned only when "'the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.'" *State v. Walker*, 119 Ariz. 121, 126, 579 P.2d 1091, 1096 (1978), *quoting United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973). An intent to abandon property "'is determined by objective factors, not the defendant's subjective intent.'" *People v. Pereira*, 58 Cal. Rptr. 3d 847, 852 (Cal. Ct. App. 2007), *quoting People v. Daggs*, 34 Cal. Rptr. 3d 649, 652 (Cal. Ct. App. 2005). And "[t]he appropriate test is whether defendant's words or actions would cause a reasonable person in the searching officer's position to believe that the property was abandoned." *Id*. at 852-53.

4

¶6 The state argues that cases from other jurisdictions on which the trial court relied are readily distinguishable from this one and urges us to reverse its ruling. In response, Huerta highlights aspects of these cases that he contends support the court's finding. Although the authorities he cites share some factual elements with the present case, we agree with the state that they are distinguishable and that the distinctions are important.

¶7 Huerta relies on *Commonwealth v. Holloway*, 384 S.E.2d 99, 103-04 (Va. Ct. App. 1989), in which the Virginia Court of Appeals held a defendant's failure to claim luggage "need not be interpreted as abandonment." There, drug enforcement agents boarded a train, told the defendant's companion they were investigating illegal drugs on the train, and asked the defendant and his companion if they owned two particular pieces of luggage, which were searched and found to contain drugs after neither the defendant nor any other passenger claimed them. *Id*. at 101. The state argued the search was proper because the defendant had abandoned the luggage by not claiming it when asked. *Id*. In upholding the trial court's suppression ruling, the court noted the luggage had been in a proper place for storage on the train, and the owner could have chosen not to answer or have been unavailable when the agents were questioning other passengers. *Id*. at 103-04.

¶8 Huerta argues that, as in *Holloway*, a failure to respond does not establish abandonment. As the state points out, however, the court expressly noted that the defendant was aware of the drug investigation and could exercise his right to remain

silent rather than claiming the luggage and incriminating himself. *Holloway*, 384 S.E.2d at 104. *But see United States v. Trimble*, 986 F.2d 394, 399 (10th Cir. 1993) (police investigation or pursuit does not render abandonment involuntary). The *Holloway* court also emphasized that the luggage was properly stored on the train. 384 S.E.2d at 104. Accordingly, the owner reasonably could expect the luggage to remain on the train if he or she did not claim it while the agents were onboard seeking information.

¶9 Here, the deputy responded to a report of shots fired and had no reason to suspect the duffle bag contained drugs. Therefore, claiming the bag, whose contents law enforcement had neither suspicion about nor the right to inspect, would not have incriminated Huerta at all. *Cf. Holloway*, 384 S.E.2d at 100, 104 (officers boarded train specifically to investigate defendant's possible drug possession and announced intention to seek drugs). Additionally, unlike the bag in *Holloway*, this duffle bag was not stored in an appropriate place, but was found lying in a roadway. Moreover, Huerta claimed all the other items except the duffle bag. Accordingly, we find *Holloway* inapposite.

¶10 In *State v. Joyner*, 669 P.2d 152 (Haw. 1983), also cited by Huerta, the defendant was found not to have abandoned a bag by remaining silent when police questioned him. There, officers executing a search warrant for evidence of gambling at a bathhouse smelled marijuana in the sauna; they arrested another man, who had marijuana on his person, and then asked the others present who owned a bag lying near the defendant. *Id.* at 153. Although the defendant did not claim it, the trial court found he had exhibited "indicia of ownership" by placing the bag, at most, two feet from himself

6

in the sauna. *Id*. at 154. The Hawaii Supreme Court upheld the suppression of evidence in the bag, expressly refusing to equate "passive failure to claim potentially incriminating evidence" with abandonment of property. *Id*. at 153.

¶11 Huerta relies on *Joyner* for the proposition that passive silence is not tantamount to abandonment. But, his conduct cannot be deemed "passive" when he had affirmatively claimed each and every other item that had been found in the street. Moreover, as we noted in our discussion of *Holloway*, Huerta would not have incriminated himself by claiming the duffle bag because the deputy had no reason to suspect it contained contraband, unlike the officers in both *Holloway* and *Joyner*. Other courts have held that a person must claim an item when given the opportunity to do so to avoid a finding of abandonment. *See United States v. Hernandez*, 7 F.3d 944, 947 (10th Cir. 1993) (defendant abandoned backpack by failing to claim it after border patrol agent on bus repeatedly asked who owned it); *People v. Henry*, 730 N.W.2d 248, 248 (Mich. 2007) (defendant's failure to object or assert ownership when police looked inside bag reflected intent to disavow connection with bag); *see also State v. Farinich*, 430 A.2d 233, 236 (N.J. Super. Ct. App. Div. 1981) (failure to deny ownership not construed as claim of privacy interest for purposes of abandonment).

¶12 Huerta also contends *Joyner* supports his additional argument that, because "the duffle bag was located in close proximity to [him]" and nobody else approached to claim it, the deputy should have inferred that he owned it. This argument is without merit as it ignores the fact that Huerta's proximity to the bag was wholly fortuitous. Before

Huerta returned to the scene, the deputy had cleared the road, piling the items from the street onto the sidewalk. Huerta's position in relation to the items was no more significant than it would have been had the deputy immediately loaded them into a vehicle and sent them to the sheriff's department as lost property or evidence.

**¶13**          The third case Huerta cites, *State v. May*, 608 A.2d 772 (Me. 1992), is similarly inapplicable. In *May*, a police officer opened a Velcro-fastened wallet inadvertently left in his patrol car by a man who had been arrested and released. *Id*. at 774-75. The officer knew the owner's identity and had no reason to open the wallet in order to return it. *Id*. at 776 n.3. The court ruled the wallet had not been abandoned and the officer's opening it could not be justified as a search of abandoned property. *Id*. at 776.

**¶14**          Although Huerta likens the duffle bag to the lost wallet in *May*, a finding of abandonment here need not rest on the bag's loss from Huerta's truck. [2] In *May*, the defendant had no opportunity to claim his wallet before it was searched. *Id*. at 773.

---

[2]The state argues that, contrary to *May*'s holding, Huerta's initial loss of items from his truck constituted abandonment. Although some authority supports this contention, *see United States v. Arias-Villanueva*, 998 F.2d 1491, 1501-02 (9th Cir. 1993) (key abandoned when unwittingly left in police car), *overruled on other grounds by United States v. Jimenez-Ortega*, 472 F.3d 1102 (9th Cir. 2007), resolving the issue is unnecessary to our resolution of this case, and we decline to decide whether the inadvertent loss of an item can constitute abandonment. *See State v. Bernini*, 220 Ariz. 536, ¶ 10, 207 P.3d 789, 792 (App. 2009) (appellate court should only decide questions required to dispose of appeal under consideration).

Here, however, the deputy could not be certain who owned the duffle as it and other items were lying on a public street when he arrived and a number of people were handling the property. And Huerta, unlike the defendant in *May*, had ample opportunity to claim the bag yet failed to do so during the approximately two hours he spent on the side of the road with the deputy and despite being specifically asked if it was his.

¶15 We conclude that none of the cases on which the trial court relied would require the suppression of this evidence, even were they controlling authority in Arizona. Rather, we agree with the state that the appropriate test here is one that considers the totality of the circumstances. *See United States v. Liu*, 180 F.3d 957, 961 (8th Cir. 1999) (court must consider all objective facts to determine if property abandoned); *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986) (whether property abandoned determined in light of totality of circumstances; important factors include denial of ownership and physical relinquishment of property); *see also Pereira*, 58 Cal. Rptr. 3d at 852-53 (appropriate test includes reasonable perception of officer). As the state correctly notes, the context here is all-important.

¶16 When asked about the property that had fallen in the street, Huerta expressly claimed every item except the duffle bag. It is difficult to see how the deputy should have interpreted Huerta's silence regarding this bag as indicating he intended to retain a privacy interest in it when he had unequivocally asserted ownership of the other items. Nor did Huerta face a constitutional dilemma of choosing between his privacy interests and his right against self-incrimination; as noted earlier, the deputy had no

9

reason to suspect the bag contained contraband and would have had no reason to open it had Huerta claimed it. *Cf. Joyner,* 669 P.2d at 153 (no abandonment when defendant forced to choose between expectation of privacy and right against self-incrimination); *Holloway*, 384 S.E.2d at 103-04 (same). In fact, the officer testified that had Huerta claimed the bag, he would not have opened it.

¶17 Finally, this is not a situation in which the status quo could have been maintained. Any reasonable person would anticipate that the police would not have left the unclaimed bag on the side of the street, but would have taken custody of it and routinely opened and inspected it for indications of ownership as well as safety considerations.[3] By not claiming the duffle bag in these circumstances, Huerta effectively elected the latter option. *See Nordling*, 804 F.2d at 1470 (bag abandoned when "it was virtually certain" it would be opened, inspected, and given to authorities before defendant could reassert control). From the totality of the circumstances here, we can only conclude Huerta intentionally abandoned the bag and thereby sacrificed any privacy interest he had in it. That being so, the deputy's search of the bag did not violate Huerta's constitutional rights, and the trial court erred in suppressing the evidence. *See*

---

[3]The state alternatively argues that the contents of the duffle bag would have been admissible under the "inevitable discovery" doctrine which would justify an otherwise illegal warrantless search. *See State v. Rojers*, 215 Ariz. 555, ¶ 18, 169 P.3d 651, 655 (App. 2007). But we need not reach that issue because, here, that the bag would have been opened by authorities in any event is part of the totality of the circumstances to consider in determining the threshold question of whether Huerta had a reasonable privacy interest in it.

10

*Walker*, 119 Ariz. at 126-27, 579 P.2d at 1096-97 (no standing to challenge search of abandoned property).

**¶18** Huerta requests that, if we find he had no reasonable expectation of privacy under the federal constitution, we separately consider the propriety of the search under the Arizona Constitution. Article II, § 8 of our constitution has, on occasion, been interpreted apart from the federal constitution and found to afford a defendant greater privacy protections. *See, e.g.*, *State v. Ault*, 150 Ariz. 459, 463, 724 P.2d 545, 549 (1986); *State v. Bolt*, 142 Ariz. 260, 264-65, 689 P.2d 519, 523-24 (1984). The circumstances under which Arizona courts analyze article II, § 8 in this manner, however, are exceedingly narrow. Except when the privacy of a person's home has been invaded, this provision does not confer any additional protection not contained in our federal constitution. *See Bolt*, 142 Ariz. at 264-65, 689 P.2d at 523-24 (Arizona's constitutional provisions "specific in preserving the sanctity of homes"); *State v. Juarez*, 203 Ariz. 441, ¶ 15, 55 P.3d 784, 788 (App. 2002) (except in home search context, protections of article II, § 8 concomitant with federal constitution). This case does not involve the warrantless search of a home and, accordingly, we decline Huerta's invitation to analyze this issue separately under our state constitution.

11

## Disposition

**¶19** Because we have found Huerta abandoned the duffle bag and its search was therefore lawful, we remand this matter to the trial court for further proceedings consistent with this decision.

_____
PHILIP G. ESPINOSA, Presiding Judge

CONCURRING:


_____
JOSEPH W. HOWARD, Chief Judge


_____
VIRGINIA C. KELLY, Judge.