[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11784
Non-Argument Calendar

_____

D.C. Docket No. 2:13-cr-00009-LGW-JEG-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CORTEZ JIMEL ARBERY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(November 14, 2014)

Before HULL, MARCUS and JULIE CARNES, Circuit Judges.

PER CURIAM:

After entering a conditional guilty plea to possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), Cortez Jimel Arbery appeals the district court's order denying his motion to suppress the firearm. After review, we affirm.

## I.  FACTUAL BACKGROUND

In early January 2013, police officers responded to a call on Leeswood Circle in Brunswick, Georgia, where Kyle Williams and another unidentified male fired a gun in the officers' presence. As a result, a warrant was issued to arrest Williams for aggravated assault.

Approximately one to two weeks later, on January 10, 2013, law enforcement received information that Williams and several other individuals were standing in the yard of a home on Stafford Avenue, just one or two miles away from Leeswood Circle. The neighborhood around Stafford Avenue was considered a high-crime area, and officers had experienced resistance from people in that area while on calls.

Sergeant Corey Sasser gathered five or six officers to help arrest Williams. Sergeant Sasser showed the officers Williams's photograph and described Williams as a six-foot-tall, medium-complected, African-American male of thin-to-medium build who wore dreadlocks. Sergeant Sasser further advised that Williams and his associates were likely to react with "fight or flight."

2

When the team of officers arrived at the residence, they saw four people standing around a car in the driveway. One of the people was Defendant Arbery. Another man in the group matched the physical description of Williams, the man they were trying to arrest, but was in fact Dashawn Palmer. Mistaking Palmer for Williams, the officers attempted to execute the arrest warrant. Four of the officers approached the group with their firearms drawn, identified themselves as police, and ordered the group to get down on the ground, which they did.

As Sergeant Sasser moved toward Palmer on the passenger side of the car, Officer Eric Melendez moved to the driver's side and approached Defendant Arbery and another man, Willie Massey. As Officer Melendez approached, he noticed that Defendant Arbery was wearing two pairs of pants, although it was a warm day. Officer Melendez ordered Defendant Arbery and Massey to the ground. Immediately after the men complied, Officer Melendez frisked Defendant Arbery, and felt what he believed to be the barrel of a gun in Arbery's groin area. After Officer Melendez handcuffed Arbery, and stood him up, Arbery stated, "It's in my right pocket." Officer Melendez reached into Arbery's right pocket and found a .38 revolver. Officer Melendez's actions from the time he exited his car until he retrieved the firearm from Defendant Arbery's pocket took approximately one minute. "[W]ithin several minutes," once everyone was detained, another officer at the scene discovered that Palmer was not Williams.

3

Meanwhile, Officer Melendez obtained information from Defendant Arbery and Massey, checked for warrants, and learned that both men had outstanding arrest warrants in North Carolina.  After learning that North Carolina would not extradite Defendant Arbery or Massey, Palmer and Massey were let go, but Defendant Arbery was arrested for carrying a concealed weapon.

## II.  DISCUSSION

The district court correctly concluded that the officers were justified in detaining Palmer to investigate whether he was Williams and, while doing so, briefly detaining and searching Arbery for their own safety.[1]

### A.    Investigatory Stop of Palmer

Under the Fourth Amendment, a police officer may stop and briefly detain an individual for investigative purposes if the officer has a reasonable suspicion that the person was or is involved in criminal activity.  United States v. Lewis, 674 F.3d 1298, 1303 (11th Cir. 2012) (citing Terry v. Ohio, 392 U.S. 1, 19-20, 88 S. Ct. 1868, 1878 (1968)).  We determine whether an investigatory stop is lawful under the Fourth Amendment by considering (1) "whether the stop was justified at its inception," and (2) "whether the stop was reasonably related in scope to the circumstances that justified the stop in the first place."  United States v. Griffin,

---

[1]In reviewing motions to suppress, we review the district court's factual findings for clear error and the district court's application of the law to the facts de novo.  United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000).  We construe the facts in the light most favorable to the party prevailing below.  Id.

4

696 F.3d 1354, 1358 (11th Cir. 2012), cert. denied, 571 U.S. ___, 134 S. Ct. 956 (2014).

Further, "[w]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." Hill v. California, 401 U.S. 797, 802, 91 S. Ct. 1106, 1110 (1971) (quotation marks omitted) (explaining that the officers' reasonable, good-faith belief that Miller was Hill, coupled with probable cause to arrest Hill, satisfied the Fourth Amendment's reasonableness requirement); see also United States v. Gonzalez, 969 F.3d 999, 1004-06 (11th Cir. 1992) (explaining that an officer's objectively reasonable, good-faith misidentification while conducting surveillance may support probable cause to arrest).

Here, it is undisputed that the officers had a warrant to arrest Kyle Williams for aggravated assault. Based on the information they received about Williams's whereabouts and the photograph and physical description of Williams, the officers reasonably suspected that the man they saw standing with a group of people at the Stafford Avenue residence was Williams.[2] Nothing suggests that the officers' belief that the man was Williams was anything other than a reasonable mistake.

---

[2]The officers did not improperly rely on the tip about Williams's purported location. The officers' independent observations of a man matching Williams' description standing with a group of people in front of the Stafford Avenue home sufficiently corroborated the tip.

5

And, the mere fact that the man turned out not to be Williams does not make his brief detention unreasonable.  Cf. Hill, 401 U.S. at 802-04, 91 S. Ct. at 1110-11.

At a minimum, the officers were warranted in briefly detaining Palmer to investigate whether he in fact was Williams.  The officers quickly determined— within several minutes—that Palmer was not Williams and released him.  In short, the officers' brief detention of Palmer to confirm whether he was Williams was justified at its inception and reasonably related in scope to the purpose of the stop, which was to arrest Williams.

**B.    Detention of Defendant Arbery**

In addition, Officer Melendez's brief detention of Defendant Arbery for approximately one minute and "frisk" for weapons were both based on the officers' safety concerns and did not require individualized suspicion.  "[F]or safety reasons, officers may, in some circumstances, briefly detain individuals about whom they have no individualized reasonable suspicion of criminal activity in the course of conducting a valid Terry stop as to other related individuals."  Lewis, 674 F.3d at 1306-08 (upholding as reasonable officers' brief detention of four men found in the parking lot of a high crime area, even though only two men admitted possessing guns, based on the officers' safety concerns and the need to "control the movements of nearby associates and exercise command over the situation").

6

Likewise, a "frisk" may be justified to protect officers and others nearby, so long as it is limited in scope to an intrusion designed to discover weapons. Terry, 392 U.S. at 29, 88 S. Ct. at 1884. "[W]hen an officer legitimately encounters an individual, whether he is investigating that individual or not, the officer may reasonably believe himself to be in danger and may wish to determine quickly whether that person is armed." United States v. Bonds, 829 F.2d 1072, 1074 (11th Cir. 1987).[3]

When Officer Melendez encountered Defendant Arbery, he knew that: (1) Williams, the man they were trying to arrest, had a propensity for violence; (2) a few weeks before, Williams and another individual allegedly fired a gun in the presence of officers, and was wanted for aggravated assault; (3) Williams and his associates might be armed and might respond with either flight or fight; (4) the area around Stafford Avenue was a high-crime area; and (5) people in the neighborhood were known to be confrontational with police who responded to calls. Under these circumstances, it was reasonable for Officer Melendez to briefly assert control over Arbery, whom he believed was one of Williams's associates, for safety reasons by ordering Arbery to lay down on the ground and then frisking Arbery for weapons on the outside of his pants.

---

[3]Because Arbery's detention was based on safety concerns, not on reasonable suspicion that he was engaged in criminal activity, the fact that Officer Melendez testified at the suppression hearing that he did not have reasonable suspicion as to Arbery is immaterial.

Finally, there is no merit to Defendant Arbery's claim that his brief detention (before Officer Melendez found the firearm) amounted to an arrest.  See United States v. Acosta, 363 F.3d 1141, 1146-47 (11th Cir. 2004) (explaining that "officers may take reasonable steps to ensure their safety so long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous" and that "an investigatory stop does not necessarily ripen into an arrest because an officer draws his weapon, handcuffs a suspect, orders a suspect to lie face down on the ground, or secures a suspect in the back of a patrol car") (quotation marks and citations omitted).  The scope and intrusiveness of Officer Melendez's brief detention of Arbery was reasonably related to the officer's need to ensure his own safety and the safety of others around him while other officers determined that Palmer was not Williams.

For these reasons, the district court did not err in denying Defendant Arbery's motion to suppress the firearm.

**AFFIRMED.**