**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Linzie Dillard BONDS,
Defendant-Appellee.**

No. 86–8499.

United States Court of Appeals,
Eleventh Circuit.

Oct. 13, 1987.

James I.K. Knapp, Jane E. Serene, U.S. Dept. of Justice, Crim. Div., Washington, D.C., for plaintiff-appellant.

Alton G. Hartley, Decatur, Ga., for defendant-appellee.

Before HILL and VANCE, Circuit Judges, and PROPST*, District Judge.

---

* Honorable Robert B. Propst U.S. District Judge for the Northern District of Alabama, sitting by designation.

HILL, Circuit Judge:

The United States appeals the district court's order suppressing evidence of the seizure of a firearm. This appeal raises only one issue: whether the pat down or "frisk" of the defendant when he arrived at the scene of a police search, given all of the facts known to the police on the scene, violated the appellee's rights under the Fourth Amendment of the United States Constitution. Finding that the limited search was reasonable and appropriate under the circumstances, we reverse the district court's order suppressing the evidence.

## I. FACTS

Appellee, Linzie Bonds, was charged with unlawfully receiving and possessing, as a convicted felon, a .25 caliber pistol which had been transported in interstate commerce, and with furnishing false information to the seller of the pistol regarding his prior criminal record in violation of 18 U.S.C. §§ 922(a), (b); 922(h)(1); 924(a); Appendix, § 1202(a). The appellee filed a motion to suppress the firearm which was the subject of the indictment, along with other evidence obtained as a result of the seizure of the firearm. A hearing was held before a magistrate who issued a report and recommendation finding that the firearm had been unlawfully seized and recommending that the motion to suppress be granted. The district court adopted the report as its opinion without further comment.

Appellee's indictment and the subsequent motion to suppress arose from the following set of facts. Within a two-month period prior to April 25, 1985, Detective D.A. Gibbs arrested at least two individuals on drug charges who supplied him with information about Linzie Bonds. That information included the following: (1) the arrestees bought their drugs from a man named Linzie Bonds; (2) Bonds was a middle-aged white male with gray hair and a gray beard who normally wore western-style clothing; (3) Bonds habitually carried a gun; (4) the

arrestees were frightened of Bonds, and thus would not work for Gibbs in investigating him; and (5) a person named Danny Thomason also sold drugs for Bonds.

On April 25, 1985 Gibbs and his partner arrested Danny Thomason near his apartment in DeKalb County, Georgia. The detectives immediately brought Thomason to his apartment where, pursuant to a previously obtained search warrant, they began to search the apartment for drugs.[1] While the detectives searched the apartment, Bonds unknowingly arrived at the apartment and knocked on the door. One of the detectives answered the door and recognizing Bonds from the descriptions given by the earlier arrestees, invited Bonds to enter. Immediately after the defendant entered the apartment, Gibbs, recalling the earlier arrestees' statements that Bonds carried a gun and that they were frightened of him, decided to frisk Bonds. The limited search revealed a pistol in Bonds' boot, and it is that pistol which is the subject of appellee's motion to suppress.

The magistrate's report and recommendation, adopted by the district court, found that the pistol and evidence derived therefrom must be suppressed because Gibbs had neither probable cause to arrest Bonds, nor a "reasonable suspicion" that Bonds was committing or about to commit a crime.

## II. DISCUSSION

The government contends that the police detectives needed neither probable cause nor a reasonable suspicion that Bonds was about to commit a crime. Instead, it argues that a frisk was appropriate so long as the detectives reasonably believed that they were in danger. Appellee, on the other hand, argues that the district court appropriately adopted the magistrate's finding that the detectives needed either probable cause or a reasonable suspicion that crime was afoot.

---

**1.** The validity of Thomason's arrest and the search of this apartment is not in question in     this case.

The crux of this case lies in the distinction between two elements of police work, the stop and the frisk, which were described by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry*, the Court held that a police officer could stop an individual so long as the officer is aware of facts which allow him, "reasonably to conclude in light of his experience that criminal activity is afoot...." 392 U.S. at 30, 88 S.Ct. at 1884. Once an officer had legitimately stopped an individual, the court held that the officer could frisk the individual so long as "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27, 88 S.Ct. at 1883. Because the stop and the frisk occurred nearly simultaneously in *Terry*, the court did not focus on the differences between the two actions.

■ The distinction focused on here between a stop and a frisk is, however, more than mere semantics. Common sense teaches that the two activities, while frequently occurring in conjunction, are actually separate activities which serve distinct purposes and require distinct justifications. A stop is the result of an officer's focused investigation into a potential crime. The officer observes suspicious behavior and, in order to further investigate, he intentionally seeks out the individual and stops him. A frisk, on the other hand, does not always result from, nor is it necessarily a part of, any focused investigation of the individual. Moreover, the need for a frisk does not always arise out of an intentional encounter. Rather, when an officer legitimately encounters an individual, whether he is investigating that individual or not, the officer may reasonably believe himself to be in danger and may wish to determine quickly whether that person is armed. As the Supreme Court stated in *Terry*, "the sole justification of the search in the present situation is the protection of the police officer and others nearby...." *Id.* at 29, 88 S.Ct. at 1884. In sum, a stop serves to

investigate crime, while a frisk serves to prevent injury.

Because these two police methods serve different purposes, it is logical that the standards by which the legitimacy of the two operations is measured also differ. This is revealed in both Supreme Court precedent and binding Fifth Circuit Court of Appeals precedent.[2] In *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), the Supreme Court addressed the question of whether the police could pat down a patron of a tavern which was legitimately being searched. The issue of a stop was not involved because the police were not investigating potential criminal activity by the patron in question. Rather, the police frisked every person in the bar solely as a safety precaution. The Court held: "The initial frisk of Ybarra was simply not supported by a reasonable belief that he was armed and presently dangerous, a belief which this Court has invariably held must form the predicate to a patdown of a person for weapons." *Id.* at 93 (footnote omitted). Thus, the court enunciated the standard governing the legitimacy of a frisk completely apart from any investigative stop.

A similar situation was involved in *United States v. Tharpe*, 536 F.2d 1098 (5th Cir.1976) (en banc). In that case, an officer arrested the driver of a car and, believing himself to be in danger, subsequently frisked the other two passengers of the car. Again, no stop was involved with regard to the two passengers because the officer was not concerned with investigating their activity, and the encounter was essentially unintentional. Indeed, it would appear that the encounter was not desired. The court held that the officer's frisk was appropriate, "so long as it is clear that he was aware of specific facts which would warrant a reasonable person to believe that he was in danger." *Id.* at 1101. This standard requires an objectively reasonable fear based upon specific facts regarding specific individuals. A generalized suspi-

---

**2.** The Eleventh Circuit has adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

cion or "hunch" will not justify a frisk. It is this standard, consistent with that stated in *Ybarra*, that governs the legitimacy of a frisk as opposed to a stop.

Applying the appropriate standard to the facts of the present case, it is quite clear that Detective Gibbs' action was appropriate and constitutional. When Bonds appeared at the door of Thomason's apartment, Gibbs had reason to believe that Bonds was a person to be feared and that he was carrying a gun, as he habitually did. Moreover, Gibbs was aware that Thomason allegedly sold drugs for Bonds, and consequently that Thomason's arrest and a search of his apartment could be very damaging for Bonds. Given these specific facts, a reasonable person could conclude that the detectives and Thomason were in danger. Thus, apart from any investigatory concern that crime was afoot, Gibbs was entitled to frisk Bonds to ensure his safety and the safety of the others present. The weapon found as a result of that search is, therefore, admissible.

The district court's order granting the appellee's motion to suppress is RE-VERSED.