IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**STATE OF ARIZONA,**
*Appellee,*

*v.*

**JOHNATHON BERNARD SERNA,**
*Appellant.*

---

No. CR-13-0306-PR
Filed August 7, 2014

---

Appeal from the Superior Court in Maricopa County
The Honorable Karen L. O'Connor, Judge
The Honorable Edward W. Bassett, Judge
No. CR2010-157188-001
**REVERSED**

---

Opinion of the Court of Appeals, Division One
232 Ariz. 515, 307 P.3d 82 (App. 2013)
**VACATED**

---

COUNSEL:

Maricopa County Public Defender, Mikel Steinfeld (argued), Deputy Public Defender, Phoenix, for Johnathon Bernard Serna

Thomas C. Horne, Arizona Attorney General; Robert L. Ellman, Solicitor General; Joseph T. Maziarz (argued), Chief Counsel, Criminal Appeals Section, Phoenix, for State of Arizona

---

JUSTICE BERCH authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, JUSTICE BRUTINEL, and JUSTICE TIMMER joined.

---

JUSTICE BERCH, opinion of the Court:

¶1        We granted review to determine whether, during an initially consensual encounter, an officer may frisk an armed individual absent reasonable suspicion that the person was engaged or was about to engage in criminal activity.  We hold that an officer must have reasonable suspicion that criminal activity is afoot before frisking the individual.

## II.  BACKGROUND

¶2        At approximately 10:00 at night, two officers patrolling a "gang neighborhood" in Phoenix observed Johnathon Serna and a woman standing in the middle of the street.  As they turned their patrol car toward the pair, Serna and the woman separated, walking in opposite directions.

¶3        The officers stopped the patrol car and Officer Richey called to Serna, who, in response, turned and walked toward them; the officers described Serna as "very cooperative and polite."  While speaking with Serna, Officer Richey observed a bulge on Serna's waistband and asked if he had any firearms.  Serna replied that he had a gun.  The officer then ordered Serna to put his hands on his head and removed the gun from Serna's waistband.  When, in response to follow-up questions, Serna admitted that he had a felony conviction, the officers arrested him as a prohibited possessor of the firearm.

¶4        Before trial, Serna moved to suppress the gun as the fruit of a search that violated his Fourth Amendment rights.  The trial court denied the motion, finding that the entire encounter was consensual and that "[o]nce the officers became aware [that Serna] had a gun, they were allowed to remove the gun and conduct a pat down for safety purposes."  A jury convicted Serna of misconduct involving weapons, and Serna appealed.

¶5        A divided panel of the court of appeals affirmed, finding the frisk justified for officer safety reasons.  *State v. Serna*, 232 Ariz. 515, 519 ¶ 19, 521 ¶ 25, 307 P.3d 82, 86, 88 (App. 2013).  Rejecting the majority's assessment that the entire encounter was consensual, the dissenting opinion concluded that the officers were not entitled to frisk Serna absent reasonable suspicion that criminal activity was afoot.  *Id.* at 522 ¶ 33, 307

P.3d at 89 (Norris, J., dissenting).

**¶6**        Serna petitioned this Court for review, which we granted to resolve a recurring issue of constitutional law. We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

### III. DISCUSSION

**¶7**        Whether an officer must possess reasonable suspicion that criminal activity is afoot in order to frisk an individual is a question of law, which we review de novo. *See State v. Moody*, 208 Ariz. 424, 445 ¶ 62, 94 P.3d 1119, 1140 (2004).

**¶8**        The Fourth Amendment protects the right of people to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. Of course, not all encounters between law enforcement and citizens constitute seizures, *Florida v. Bostick*, 501 U.S. 429, 434 (1991), and not all seizures are constitutionally unreasonable, *see Elkins v. United States*, 364 U.S. 206, 222 (1960). Encounters that are entirely consensual do not implicate the Fourth Amendment. *Bostick*, 501 U.S. at 434; *see also Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). A police officer may approach an individual and ask questions without running afoul of the Fourth Amendment: "So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required." *Bostick*, 501 U.S. at 434 (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)). "The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." *Id.* Police officers are thus free to ask questions of persons they encounter "as long as the police do not convey a message that compliance with their requests is required." *Id.* at 435.

**¶9**        At the outset, the encounter between Serna and the officers was consensual. When addressed, Serna walked toward the officers and voluntarily answered their questions. He was "very cooperative" and demonstrated no ambivalence about conversing with them.

**¶10**        But police interactions with members of the public are inherently fluid, and what begins as a consensual encounter can evolve into

a seizure that prompts Fourth Amendment scrutiny. *See id.*; *see also State v. Wyman*, 197 Ariz. 10, 14 ¶ 12, 3 P.3d 392, 396 (App. 2000) (consensual encounter became seizure when juvenile complied with several requests from officer to return); *Commonwealth v. Narcisse*, 927 N.E.2d 439, 443 (Mass. 2010) (consensual stop became a Fourth Amendment seizure "once the officers told the defendant that they intended to pat frisk him"). Thus, the relevant question is not simply whether the encounter was consensual at the start, but whether at some point it became non-consensual, thus triggering Fourth Amendment protections. *See Terry*, 392 U.S. at 16.

**¶11**　　　The State argues that when an encounter begins consensually, an officer's order, given for safety reasons, does not alter the consensual nature of the interaction. At the suppression hearing, the State's counsel maintained that if Serna, after putting his hands up, had simply said, "I don't want to talk to you . . . , [he] could have walked away." But the record belies this assertion. Earlier at that hearing, Officer Richey had testified that his direction to Serna to put his hands on his head was an order, not a request.

**¶12**　　　A reasonable person would not have felt free to disregard such a command from a law enforcement officer. *See State v. Rogers*, 186 Ariz. 508, 509–10, 924 P.2d 1027, 1028–29 (1996) (finding that a reasonable person would not feel free to leave when the officer held out his badge and stated, "police officers, we need to talk to you"); *see also Gentry v. Sevier*, 597 F.3d 838, 844–45 (7th Cir. 2010) (concluding that a *Terry* stop occurred when the "officer exited the [patrol] car and told Gentry to 'keep [his] hands up'" (second alteration in original)). The Supreme Court has said that "whenever a police officer . . . restrains [a person's] freedom to walk away, he has 'seized' that person," and such a seizure implicates the Fourth Amendment. *Terry*, 392 U.S. at 16. Officers may not involuntarily detain individuals "even momentarily without reasonable, objective grounds for doing so." *Florida v. Royer*, 460 U.S. 491, 498 (1983).

**¶13**　　　The order and frisk at issue here "restrain[ed Serna's] freedom to walk away" and thus constituted a seizure for Fourth Amendment purposes. *See Terry*, 392 U.S. at 16; *see also id.* at 19 (finding it beyond question that the officer seized Terry when he "took hold of him and patted down the outer surfaces of his clothing"). Such a seizure

4

requires constitutional justification. *See Royer*, 460 U.S. at 498.

**¶14**        In *Terry*, the Court stated that an officer is justified in frisking individuals for weapons if the officer can reasonably conclude "[1] that criminal activity may be afoot *and* [2] that the persons with whom he is dealing may be armed and presently dangerous." 392 U.S. at 30 (emphasis added). The question before us now is whether a frisk must be supported by both of these conditions, or whether satisfying just one will suffice.

**¶15**        The Supreme Court's opinions are instructive. Just three years after *Terry*, the Court suggested that both conditions must be met, stating that officers may conduct weapons searches if the "officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous." *Adams v. Williams*, 407 U.S. 143, 146 (1972) (internal footnote omitted). In 2009, the Supreme Court again reiterated this two-part analysis, explaining that in *Terry*, it

> upheld "stop and frisk" as constitutionally permissible *if two conditions are met.* First, the investigatory stop must be lawful. That requirement is met in an on-the-street encounter, *Terry* determined, when the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense. Second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous.

*Arizona v. Johnson*, 555 U.S. 323, 326–27 (2009) (emphasis added).

**¶16**        Justice Harlan's concurrence in *Terry* provides the clearest explanation of the rationale for requiring that both conditions be met:

> [I]f the frisk is justified in order to protect the officer during an encounter with a citizen, the officer must first have constitutional grounds to insist on an encounter, to make a forcible stop. Any person, including a policeman, is at liberty to avoid a person he considers dangerous. If and when a policeman has a right instead to disarm such a person for his own protection, he must first have a right not to avoid him

but to be in his presence. That right must be more than the liberty (again, possessed by every citizen) to address questions to other persons, for ordinarily the person addressed has an equal right to ignore his interrogator and walk away; he certainly need not submit to a frisk for the questioner's protection. I would make it perfectly clear that the right to frisk . . . depends upon the reasonableness of a forcible stop to investigate a suspected crime.

*Terry*, 392 U.S. at 32–33 (Harlan, J., concurring). The Court expressly acknowledged Justice Harlan's concurrence in *United States v. Place*, 462 U.S. 696, 702 n.4 (1983). And a prominent Fourth Amendment commentator has endorsed this analysis as "eminently sound." *See* Wayne R. LaFave, 4 Search & Seizure § 9.6(a), at 839 (5th ed. 2012). So while the dual justification required for a frisk was not explicitly recognized in *Terry*, the Court's evolving Fourth Amendment jurisprudence supports the conclusion that both conditions must be met to justify a frisk of an individual. *See Johnson*, 555 U.S. at 326–27; *Williams*, 407 U.S. at 146.

¶17 Our conclusion is buttressed by the decisions of other state and federal courts that have considered the issue. *See, e.g.*, *United States v. Massenburg*, 654 F.3d 480, 485 (4th Cir. 2011) (noting that reasonable suspicion is "required prior to a frisk when the officer's initial encounter with the citizen is voluntary"); *United States v. Burton*, 228 F.3d 524, 527 (4th Cir. 2000) (stating that a "police officer may elevate a police-citizen encounter into an investigatory detention only if the officer has 'a reasonable suspicion supported by articulable facts that criminal activity may be afoot'" (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)); *United States v. Ubiles*, 224 F.3d 213, 214 (3d Cir. 2000) (finding stop and search based on possession of gun unjustified because carrying firearms was not illegal and thus could not alone provide reasonable suspicion of criminal activity); *United States v. Gray*, 213 F.3d 998, 1000–01 (8th Cir. 2000) (finding protective frisk violated Fourth Amendment because officers had no reasonable suspicion that a man who willingly stopped and answered questions was engaged in criminal activity); *accord In re Ilono H.*, 210 Ariz. 473, 477 ¶ 12, 113 P.3d 696, 700 (App. 2005) (observing that "an officer's right to conduct a pat-down search should be predicated on the officer's right to initiate an investigatory stop in the first instance"); *Gomez v. United*

*States*, 597 A.2d 884, 890–91 (D.C. 1991) (noting that, without reasonable suspicion, police could not justify a frisk based on officer safety concerns alone); *Narcisse*, 927 N.E.2d at 445 (stating that "police officers may not escalate a consensual encounter into a protective frisk absent reasonable suspicion that an individual has committed, is committing, or is about to commit a criminal offense *and* is armed and dangerous"); *Speten v. State*, 185 P.3d 25, 33 (Wyo. 2008) (observing that "there is neither a 'freestanding' right to search based solely upon officer safety concerns, nor is there a 'freestanding' right to search based solely upon reasonable suspicion of the presence of weapons").

¶18      Nonetheless, the State argues that a frisk satisfies the Fourth Amendment when the officer has reason to believe that the individual to be frisked is armed and dangerous, even if the officer has no reasonable suspicion of criminal activity. But many of the cases on which the State relies for this proposition are unhelpful because the courts there found reasonable suspicion of criminal activity. *See, e.g.*, *United States v. Ellis*, 501 F.3d 958, 962 (8th Cir. 2007) (finding "there was reasonable suspicion [of criminal activity] to justify a pat-down search"); *United States v. Romain*, 393 F.3d 63, 71–72 (1st Cir. 2004) (evaluating whether pat-down was appropriate "following a valid *Terry* stop" and determining that defendant's behavior "gave rise to a reasonable suspicion . . . [of] criminal wrongdoing"); *United States v. Davis*, 202 F.3d 1060, 1062 (8th Cir. 2000) (stating that "[t]o be constitutionally reasonable, a protective frisk must also be based upon reasonable suspicion that criminal activity is afoot"); *United States v. $84,000 U.S. Currency*, 717 F.2d 1090, 1098–99 (7th Cir. 1983) (upholding pat down, but finding reasonable suspicion of criminal activity).

¶19      Another case on which the State relies, *United States v. Bonds*, considered the frisk of a drug dealer who arrived at an associate's apartment while police were executing a search warrant. 829 F.2d 1072, 1073–74 (11th Cir. 1987). The court found it unnecessary to establish reasonable suspicion of criminal activity by the defendant, instead focusing on the inherent dangerousness of the circumstances: the officer was executing a search warrant for drugs, knew Bonds dealt drugs, and "had reason to believe that Bonds was a person to be feared and . . . was carrying a gun." *See id*. at 1074–75. Thus, while *Bonds* provides some support for the

State's argument, it is distinguishable from the case at hand.

**¶20** The State urges us to follow *United States v. Orman*, 486 F.3d 1170, 1173 (9th Cir. 2007), in which the Ninth Circuit determined that "*Terry* did not cabin the use of officer safety patdowns to lawful investigatory detentions." In *Orman*, an off-duty officer, having heard that Orman was carrying a gun in the mall, stopped him and asked if he was armed. *Id.* at 1171–72. Orman acknowledged that he had a gun in his waistband. *Id.* at 1172. The officer retrieved the weapon, and Orman was later charged with unlawfully possessing the firearm. *Id.* The district court denied Orman's motion to suppress the gun. *Id.* at 1173. The Ninth Circuit affirmed, reasoning that "a *Terry* stop-and-frisk 'constitutes two independent actions.'" *Id.* at 1174 (quoting *United States v. Flippin*, 924 F.2d 163, 165 n.2 (9th Cir. 1991)). The court held that the encounter was consensual, but the seizure was nonetheless justified "for safety purposes." *Id.* at 1176–77. It concluded that "reasonable suspicion that [a person is] carrying a gun . . . is all that is required for a protective search under *Terry*." *Id.* at 1176.

**¶21** We disagree and conclude that *Terry* allows a frisk only if two conditions are met: officers must reasonably suspect both that criminal activity is afoot and that the suspect is armed and dangerous. *See, e.g.*, *Johnson*, 555 U.S. at 326. Because the analysis in *Orman* ignores one prong of *Terry*, we disagree with the Ninth Circuit's reasoning.

**¶22** We also disagree with the Ninth Circuit's determination that mere knowledge or suspicion that a person is carrying a firearm satisfies the second prong of *Terry*, which itself involves a dual inquiry; it requires that a suspect be "armed *and* presently dangerous." *See Terry*, 392 U.S. at 30 (emphasis added); *see also Johnson*, 555 U.S. at 326–27 (observing that "to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous"). In a state such as Arizona that freely permits citizens to carry weapons, both visible and concealed, the mere presence of a gun cannot provide reasonable and articulable suspicion that the gun carrier is presently dangerous.

**¶23** Here, the initial stop was based on consent, not on any asserted suspicion of criminal activity. Had reasonable suspicion of criminal activity existed before the encounter or developed during the

encounter, given that Serna was armed, the officer may have had grounds to frisk Serna. *See Narcisse*, 927 N.E.2d at 446. But when officers consensually engage citizens on the street without having any evidence of wrongdoing, the mere presence of a weapon does not afford officers constitutional permission to search weapons-carrying individuals. To conclude otherwise would potentially subject countless law-abiding persons to patdowns solely for exercising their right to carry a firearm.

¶24 We recognize, as did the Massachusetts Supreme Judicial Court in *Narcisse*, that "consensual encounters between police officers and citizens frequently escalate to the point of a search without being preceded by an analytically distinct stop." 927 N.E.2d at 444. These fast-developing situations may "blur the tidiness of the two-pronged *Terry* analysis." *Id.* In such cases, the facts that may support reasonable suspicion of criminal activity may develop as the officer is determining whether the individual is dangerous or appears ready to commit violence. *See id.* at 446. As the *Narcisse* court explained, "[w]hen an individual appears to be ready to commit violence, either against police officers or bystanders, it is reasonable to believe [both] that he is 'about to commit a crime,'" and "that he is armed and dangerous," *id.*, and thus a frisk would be justified. But without the additional justification provided by such facts, officers may not conduct protective searches of persons they engage in consensual conversations.

¶25 We also find inapposite *Pennsylvania v. Mimms*, 434 U.S. 106, 107 (1977), on which the court of appeals relied. *Serna*, 232 Ariz. at 520–21 ¶¶ 20, 24, 307 P.3d at 87–88. In *Mimms*, when examining a search that occurred in the course of a lawful traffic stop, the Supreme Court stated that a "bulge in the [individual's] jacket permitted the officer to conclude that Mimms was armed and thus posed a serious and present danger to the safety of the officer." 434 U.S. at 112. *Mimms* is distinguishable because there, the police already had probable cause to believe that Mimms had committed at least one offense. *See* 434 U.S. at 109. The Court also noted that "approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile." *Id.* at 110 (citing Bristow, Police Officer Shootings — A Tactical Evaluation, 54 J. Crim. L.C. & P.S. 93 (1963)). Finally, carrying a concealed weapon was itself a criminal act in Pennsylvania. *Id.* at 106. Here, the State presented no evidence that the police had either probable cause or reasonable suspicion that Serna was

engaged in criminal activity when Officer Richey ordered him to put his hands on his head.

¶26     We instead follow cases from the Supreme Court requiring compliance with both parts of the *Terry* analysis. *See Johnson*, 555 U.S. at 326–27; *Williams*, 407 U.S. at 146. In applying the two-part analysis here, we conclude that while the initial encounter was consensual, that consent ended when the officer ordered Serna to put his hands on his head. At that point, because the officer had no reasonable suspicion that Serna had committed or was about to commit a crime, the officer had no justification for frisking Serna, and the frisk violated the Fourth Amendment.

¶27     The court of appeals observed that requiring an officer to suspect criminal activity before permitting a *Terry* frisk "would hinder the officer's ability to investigate suspicious behavior" or to assist individuals in need. *Serna*, 232 Ariz. at 519 ¶ 17, 307 P.3d at 86. But such reasons cannot justify unwarranted infringements on Fourth Amendment rights. There are appropriate ways for officers to protect themselves once they become aware that a person is armed. An officer can, for example, ask for consent to remove a gun for the duration of the encounter. But absent consent, to seize a weapon the officer must justify a frisk with facts sufficient to establish a reasonable suspicion of criminal activity — a low standard, readily established in many search settings. *See Navarette v. California*, 134 S. Ct. 1683, 1687 (2014) ("Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." (internal citations omitted)).

¶28     Our holding governs only those circumstances in which the police wish to search a person with whom they are engaged in a consensual encounter. In such cases, absent consent, an officer may frisk an individual only when the officer possesses both a reasonable suspicion that the person to be searched has engaged or is about to engage in criminal activity and a reasonable belief that the person is armed and dangerous.

¶29     While we understand the need for officers to protect themselves in the course of their duties, we must balance that weighty

interest against the "inestimable right" of citizens to be free from unreasonable governmental searches and seizures. *See Terry*, 392 U.S. at 8–9. That officers must have a constitutional justification to search an individual has been firmly established by *Terry* and its progeny. *See id.* at 30; *see also Johnson*, 555 U.S. at 326–27; *Williams*, 407 U.S. at 146.

## IV. CONCLUSION

**¶30** The court of appeals erred in holding that police officers may frisk individuals without establishing reasonable suspicion that criminal activity is afoot. We therefore vacate the court of appeals' opinion and reverse Serna's conviction and sentence.