348 P.3d 907

**Humberto Portillo GASTELUM,
Petitioner,**

v.

**The Honorable Hugh E. HEGYI, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**William Montgomery, the Maricopa County Attorney, Real Party in Interest.**

No. 1 CA–SA 14–0204.

Court of Appeals of Arizona,
Division 1.

April 30, 2015.

Alex E. Navidad, P.L.C. By Alex E. Navidad, Phoenix, for Petitioner.

Maricopa County Attorney's Office By Lisa Marie Martin, Phoenix, for Real Party in Interest.

Presiding Judge PETER B. SWANN delivered the opinion of the court, in which Judge KENTON D. JONES and Judge MICHAEL J. BROWN joined.

## OPINION

SWANN, Judge:

¶1 In *State v. Serna*, 235 Ariz. 270, 331 P.3d 405 (2014), the supreme court established a new rule limiting some *Terry* stops to those occasions when officers reasonably suspect that criminal activity is afoot and that an individual is armed and dangerous. This special action arises out of the superior court's order denying Humberto Gastelum's motion to suppress contraband discovered during a *Terry* frisk. Gastelum contends that because police did not have reason to believe he was both armed and dangerous, they did not have legal grounds to frisk him. We hold that the *Serna* rule applies only when the initial encounter between the officer and the individual is consensual. This case does not involve a consensual encounter, and the trial court therefore correctly denied Gastelum's motion to suppress.

## FACTS AND PROCEDURAL HISTORY

¶2 Phoenix Police Officer Dustin Hooker was on duty in his marked police car when he began following a vehicle on the interstate. He noticed that the vehicle was weaving in and out of lanes, and the driver seemed to be watching him in his mirrors instead of focusing on the road. Ofc. Hooker conducted a traffic stop and contacted the driver. The driver asked the passenger, Gastelum, to get the necessary paperwork out of the glove box. Ofc. Hooker observed that, unlike the driver, Gastelum appeared to be extremely nervous. Upon request, the driver gave Ofc. Hooker consent to search the vehicle. Ofc. Hooker walked to the passenger-side door and asked Gastelum if he had identification. Gastelum began to go through his wallet and pulled out various cards, including several religious cards, and eventually handed Ofc. Hooker an auto-auction identification card. According to Ofc. Hooker, one of the cards Gastelum took out of his wallet depicted a religious character to whom drug traffickers commonly pray for protection during their endeavors.[1]

¶3 Ofc. Hooker then asked Gastelum to exit the vehicle. However, instead of exiting the way Ofc. Hooker expected, which would have been to continue moving to the right with his waistband facing Ofc. Hooker, Gastelum got out and turned to his left, walking around the open passenger door with his waistband facing away from Ofc. Hooker. Ofc. Hooker testified that this instantly attracted his attention because it seemed as though Gastelum was trying to hide something in his waistband. Ofc. Hooker then stopped Gastelum, believing he might have a gun in his waistband, and conducted a *Terry* frisk. When Ofc. Hooker patted Gastelum on the right front side of his waistband, he felt a bulge which he "immediately thought was a handgun." Ofc. Hooker asked Gastelum if the bulge was a gun and Gastelum did not answer. Then Ofc. Hooker lifted up Gastelum's shirt and saw that the bulge was not a gun, but a hard package wrapped in cellophane, which he immediately recognized as illegal drugs. Ofc. Hooker continued the frisk and found another package on the left front side of Gastelum's waistband.

¶4 Gastelum filed a motion to suppress the drugs found in his waistband. He argued that the frisk violated *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *State v. Serna*, 235 Ariz. 270, 331 P.3d 405 (2014), because Ofc. Hooker did not possess both a reasonable suspicion that Gastelum was engaged in criminal activity and a reasonable belief that he was armed and danger-

1. Ofc. Hooker testified that he would expect to find a shrine or tribute to this particular saint, Jesus Malverde, in approximately two out of every five drug-stash houses.

ous. The trial court denied the motion, finding that the totality of the circumstances gave Ofc. Hooker reasonable suspicion that Gastelum was engaged in criminal activity. The court also found that Ofc. Hooker had a reasonable basis to believe that Gastelum might be armed because of his unusual movement in exiting the vehicle, and that Ofc. Hooker was therefore justified in frisking Gastelum for weapons. Gastelum then petitioned this court for special action relief.

## JURISDICTION

¶ 5 "[T]he denial of a typical motion to suppress cannot merit the exercise of special action jurisdiction. If that were so, this court would be opening floodgates of petitions beyond its capacity." *Rodriguez v. Arellano*, 194 Ariz. 211, 215, ¶ 15, 979 P.2d 539, 543 (App.1999) (Weisberg, J., dissenting). However, we recognize that special action jurisdiction can be appropriate if the denial concerns an issue of first impression that turns on a question of law. *Lind v. Superior Court (State)*, 191 Ariz. 233, 236, ¶ 10, 954 P.2d 1058, 1061 (App.1998).

¶ 6 *Serna* recently held that before conducting a *Terry* frisk, two conditions must be met: 1) officers must reasonably suspect that criminal activity is afoot; and 2) officers must reasonably suspect that the detainee is both armed *and* dangerous. 235 Ariz. at 275, ¶¶ 21–22, 331 P.3d at 410. The court held "[i]n a state such as Arizona that freely permits citizens to carry weapons, both visible and concealed, the mere presence of a gun cannot provide reasonable and articulable suspicion that the gun carrier is presently dangerous." *Id.* at ¶ 22. This is a marked departure from earlier case law, which often *equated* reasonable suspicion that a person is armed with reasonable suspicion that he is dangerous. *See State v. Winegar*, 147 Ariz. 440, 446, 711 P.2d 579, 585 (1985) (holding that because there was strong evidence that the suspect may have been armed, a weapons pat-down was reasonable because "an officer is justified in performing an immediate weapons pat-down if he reasonably suspects a weapon may be found"); *State v. Smith*, 136 Ariz. 273, 276, 665 P.2d 995, 998 (1983) (holding that "[w]hen an officer is justified in

believing that the detainee is armed, he may perform a pat-down search for weapons in the interests of safety"); *State v. Mosley*, 119 Ariz. 393, 398, 581 P.2d 238, 243 (1978) (holding that because "officers could have reasonably suspected that criminal activity was afoot, and that persons within the vehicle were armed," a *Terry* stop and frisk was justified); *In re Roy L.*, 197 Ariz. 441, 446, ¶ 16, 4 P.3d 984, 989 (App.2000) (holding that after suspect admitted he was carrying a weapon, officer was justified in believing his safety was in danger and in conducting a frisk).

¶ 7 Because *Serna* created a new analysis governing motions to suppress based on evidence seized during a *Terry* stop, this special action concerns a legal question of first impression and we accept jurisdiction.

## DISCUSSION

¶ 8 To conduct a *Terry* stop-and-frisk, an officer must first reasonably suspect that the person is or has engaged in criminal activity; and to proceed from a stop to a frisk, the officer must have reason to suspect that the person stopped is armed and dangerous. *Arizona v. Johnson*, 555 U.S. 323, 326–27, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009). In *Johnson*, the United States Supreme Court held "in a traffic-stop setting, the first *Terry* condition—a lawful investigatory stop—is met whenever it is lawful for police to detain an automobile and its occupants ... [t]he police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity." *Id.* at 327, 129 S.Ct. 781. However, to justify a frisk of a passenger during a traffic stop, "just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Id.* Therefore, the trial court only needed to consider the second prong of *Terry*—whether Ofc. Hooker had reason to believe that Gastelum was armed and dangerous. In this regard, the court found that Ofc. Hooker had a reasonable basis to believe that Gastelum might be armed because of his unusual movement in exiting the vehicle. The court did not determine expressly

whether Ofc. Hooker had reason to believe Gastelum was dangerous. Because *Serna* does not apply, the trial court was not required to make such a finding.

¶ 9 During the suppression hearing, Gastelum continually sought to portray the encounter with Ofc. Hooker as consensual. Ofc. Hooker also testified that Gastelum was free to walk away from the car during the traffic stop. This assertion does not withstand even casual scrutiny. "[A] traffic stop of a car communicates to a reasonable passenger that he or she is not free to terminate the encounter with the police and move about at will." *Johnson*, 555 U.S. at 333, 129 S.Ct. 781. As in *Johnson*, there was nothing that occurred in this case that would have conveyed to Gastelum, before the frisk, that the traffic stop had ended or that he was otherwise free to depart without permission. *See id.* at 333–34, 129 S.Ct. 781.[2]

¶ 10 Gastelum presumably asserts that the encounter was consensual because *Serna* is expressly limited to consensual encounters between police officers and citizens on the street. The *Serna* court stated that "when officers consensually engage citizens on the street without having any evidence of wrongdoing, the mere presence of a weapon does not afford officers constitutional permission to search weapons-carrying individuals." 235 Ariz. at 275, ¶ 23, 331 P.3d at 410. And the court limited its holding to "only those circumstances in which the police wish to search a person with whom they are engaged in a consensual encounter." *Id.* at 276, ¶ 28, 331 P.3d at 411. Here, Ofc. Hooker did not engage Gastelum on the street in a consensual manner—Gastelum was lawfully seized during the course of a traffic stop. *Serna* therefore is not controlling here and the court's earlier holdings apply.

¶ 11 We hold that when an encounter between a police officer and an individual is not based on consent, and an officer has a reasonable suspicion both that criminal activity is afoot and that the individual is armed, the officer may conduct a *Terry* frisk without

specifically assessing the likelihood that the individual is presently dangerous.

## CONCLUSION

¶ 12 For the above reasons, we accept jurisdiction and deny relief.

---

2. Although the encounter was not consensual, that does not mean it was not reasonable. "An officer's inquiries into matters unrelated to the justification for the traffic stop ... do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Johnson*, 555 U.S. at 333, 129 S.Ct. 781.