NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

KIMBERLY CONDIFF, *Appellant.*

No. 1 CA-CR 14-0842
FILED 12-15-2015

Appeal from the Superior Court in Maricopa County
No. CR2014-102802-001
The Honorable Peter C. Reinstein, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Myles A. Braccio
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Louise Stark
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Donn Kessler delivered the decision of the Court, in which Judges Andrew W. Gould and Patricia K. Norris joined.

---

**K E S S L E R**, Judge:

¶1        Appellant Kimberly Condiff ("Condiff") was tried and convicted of false reporting to a law enforcement agency, a class 1 misdemeanor; possession or use of a dangerous drug, a class 4 felony; and possession of drug paraphernalia, a class 6 felony.  Condiff challenges the trial court's partial denial of her motion to suppress statements she made to police and the search of her fanny pack.  For the reasons stated below we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2        At approximately 9:00 p.m. on January 16, 2014, police officers C and P (collectively, the "Officers") were on routine patrol in an area known for drug activity and violent crime.  They wore uniforms and drove a marked patrol car.  The Officers observed Condiff walking alone, pulled up alongside the sidewalk where she was walking, and asked if she was willing to speak with them.  She said yes.  The Officers asked Condiff for her identifying information, and she provided a false name and birthdate.  Officer P ran a warrant check using the information Condiff provided, then returned to where Condiff and Officer C were standing and asked Condiff to respell her name.  Condiff provided a different spelling than she had originally provided.  According to Officer C, while Officer P went back to the patrol car, Officer C asked Condiff if she had any weapons.  Officer C testified that Officer P then came back a second time and said Condiff's identifying information did not show up in the system, and Condiff then attempted to walk away from the Officers.  Officer C walked alongside Condiff as she attempted to walk away and asked her whether

she had any weapons or drugs.[1] She initially said no, then admitted she had a drug pipe that did not belong to her. Officer C then stepped in front of Condiff, putting his arm out to stop her, and the Officers arrested Condiff for providing a false name. The Officers searched Condiff's fanny pack where they found methamphetamine and drug paraphernalia. The Officers learned Condiff's real name when they dropped Condiff's possessions off at her aunt's house after the arrest.

¶3        The State charged Condiff with Count 1: false reporting to law enforcement agency, a class 1 misdemeanor; Count 2: possession or use of dangerous drugs, a class 4 felony; and Count 3: possession of drug paraphernalia, a class 6 felony. Condiff plead not guilty to all charges and moved to suppress evidence discovered as the result of an illegal stop. The trial court granted Condiff's motion in part, excluding any statements Condiff made after being detained but before being advised of her rights under *Miranda*.[2] The court also found, however, that the first contact between law enforcement and Condiff was consensual; that reasonable suspicion and possible probable cause of an Arizona Revised Statutes ("A.R.S.") section 13-2907.01 (2010) violation existed after the Officers could not find Condiff's identifying information and she began to walk away; and that discovery of the drugs and drug paraphernalia was not fruit of the poisonous tree because the discovery was inevitable following the arrest for the false information charge.

¶4        A jury found Condiff guilty of all three counts. The trial court suspended imposition or execution of sentence and placed Condiff on probation for one year for Count 1 and two years for Counts 2 and 3. It required that probation for all three counts run concurrently.

¶5        Condiff timely appealed. We have jurisdiction pursuant to A.R.S. § 13-4033(A)(1) (2010).

---

[1] The Officers provided conflicting testimony as to whether Officer C stopped Condiff before asking her about drugs and the number of times Officer P ran a warrant check using the information Condiff provided. We review the facts in the light most favorable to upholding the trial court's ruling on a motion to suppress, however, and therefore defer to the trial court's factual findings. *State v. Huerta*, 223 Ariz. 424, 425, ¶ 2 (App. 2010).
[2] *Miranda v. Arizona*, 384 U.S. 436 (1996).

## DISCUSSION

¶6        When reviewing a motion to suppress, we evaluate discretionary issues for an abuse of discretion but review legal issues de novo. *Huerta*, 223 Ariz. at 426, ¶ 4. We look only at the evidence presented to the trial court during the suppression hearing, *State v. Brown*, 233 Ariz. 153, 156, ¶ 4 (App. 2013), and view the facts in the light most favorable to the trial court's ruling, *State v. Gerlaugh*, 134 Ariz. 164, 167 (1982); *State v. Huerta*, 223 Ariz. 424, 425, ¶ 2 (App. 2010).

¶7        "Law enforcement officers have wide latitude to approach people and engage them in consensual conversation." *State v. Hummons*, 227 Ariz. 78, 80, ¶ 7 (2011). A consensual encounter between a citizen and a police officer "will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." *State v. Serna*, 235 Ariz. 270, 272, ¶ 8 (2014) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). Whether this occurred, converting the encounter into a seizure, is a mixed question of law and fact. *Maricopa Cty. Juv. Action No. JT30243*, 186 Ariz. 213, 216 (App. 1996). We review questions of fact for "clear and manifest error" and questions of law de novo. *Id.*

¶8        A person is seized "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). "[T]he threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled" may indicate a seizure. *Id.* An encounter that ceases to be consensual may be extended only upon reasonable suspicion of criminal activity. *See State v. Sweeney*, 224 Ariz. 107, 112, ¶ 17 (App. 2010) (Brown, J., specially concurring).

¶9        Reasonable suspicion is less demanding than probable cause, requiring "at least a minimal level of objective justification" for extension of the encounter. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Determination of reasonable suspicion is based on "commonsense judgments and inferences about human behavior," *id.* at 125, "considering such objective factors as the defendant's appearance and conduct and the officer's relevant knowledge, experience, and training," *Sweeney*, 224 Ariz. at 112, ¶ 22. The officer must be able to point to more than an "inchoate and unparticularized suspicion or 'hunch'" of criminal activity. *Wardlow*, 528 U.S. at 123-24 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

¶10         Condiff argues the initial stop was unlawful because there were no articulable facts creating reasonable suspicion of criminal activity. We disagree.  Police officers do not need reasonable suspicion to approach an individual and ask questions if the encounter is consensual.  *See Bostick*, 501 U.S. at 434 ("[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions."); *Serna*, 235 Ariz. at 272, ¶ 9 (holding an initial encounter in which two officers called to the defendant from their patrol car and the defendant voluntarily answered questions consensual).  The facts in this case are very similar to those in *Serna*, and we find the *Serna* holding instructive.[3]  In both *Serna* and the case at hand, two officers patrolled a Phoenix neighborhood late at night, pulled their patrol cars over, and called out to the defendant.  *See Serna*, 235 Ariz. at 271-72, ¶¶ 2-3.  In both cases, the defendants agreed to speak with the officers.  *See id.* at 272, ¶ 9.  The Arizona Supreme Court found that the initial *Serna* encounter was consensual and we similarly find that the initial encounter in this case was consensual.  *See id.*

¶11         Condiff also argues that after she provided the name, the encounter became nonconsensual because she tried to walk away but was followed and questioned by Officer C.  As the State correctly points out and the trial court held in part, by that point the Officers had established reasonable suspicion that Condiff had committed a crime because she had

---

[3] Condiff cites *State v. Winegar*, 147 Ariz. 440 (1985), and *State v. Rogers*, 186 Ariz. 508 (1996), to support her argument that her acquiescence was not consensual.  *See Winegar*, 147 Ariz. at 447 ("The mere fact that a police officer 'asks' a citizen to accompany him rather than commands obedience does not mean that a citizen can reasonably believe he is free to refuse.").  The facts in *Winegar* and *Rogers* are distinguishable from the facts in this case, however, and we accordingly find the holding in *Serna* to be more instructive than those in *Winegar* and *Rogers*.  In *Winegar*, the defendant "was surrounded by six armed police officers, told to keep her hands away from her body, and told to step away from [another suspect], who was then frisked" before the police officers told her they wanted to talk to her.  *Id.* None of these factors were present in this case.  In *Rogers*, a police officer approached the defendant, holding his badge in his hand and saying, "police officers, we need to talk to you."  186 Ariz. at 509.  The defendant attempted to run from the police officers but the officers chased him.  *Id.* Here, the Officers merely asked Condiff if she was willing to speak with them, rather than ordering her to do so, and Condiff did not attempt to leave until after the Officers had run a second unsuccessful warrant check.

provided false information and had attempted to walk away from them.[4] Under these facts, Officer C's pursuit and continued questioning constituted a valid *Terry* stop.[5] *See Terry*, 392 U.S. at 22-23.

**¶12**　　　　Once the Officers arrested Condiff, the search of her fanny pack was valid as a search incident to arrest. *See United States v. Robinson*, 414 U.S. 218, 235 (1973) ("[I]n the case of a lawful custodial arrest a full search of the person is . . . a 'reasonable' search under [the Fourth] Amendment.").

## CONCLUSION

**¶13**　　　　For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED: ama

---

[4] Although a "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure," *Bostick*, 501 U.S. at 437, "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion," *Wardlow*, 528 U.S. at 124; *see also Sokolow*, 490 U.S. at 9-10 (stating that although one factor by itself may not be proof of illegal conduct, multiple factors taken together can amount to reasonable suspicion).

[5] "An investigatory stop is permissible under the Fourth Amendment if supported by reasonable suspicion." *Ornelas v. United States*, 517 U.S. 690, 693 (1996).