NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA,
*Appellee*,

*v.*

CHRISTOPHER PAUL MASON,
*Appellant*.

No. 1 CA-CR 19-0019
FILED 2-6-2020

Appeal from the Superior Court in Maricopa County
No.  CR2014-119208-001
The Honorable George H. Foster, Jr., Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

The Susser Law Firm, PLLC, Chandler
By Adam M. Susser
*Counsel for Appellant*

Christopher Paul Mason, Phoenix
*Appellant*

## MEMORANDUM DECISION

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge James B. Morse Jr. joined.

J O H N S E N, Judge:

¶1        Christopher Paul Mason filed this appeal in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), following his conviction of possession or use of dangerous drugs, a Class 4 felony.  Mason's counsel has searched the record on appeal and found no arguable question of law that is not frivolous. *See Smith v. Robbins*, 528 U.S. 259, 284 (2000); *Anders*, 386 U.S. at 744; *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999).  Counsel now asks this court to search the record for fundamental error.  Mason filed a supplemental brief identifying various issues, which we address below.  After reviewing the entire record, we affirm Mason's conviction and sentence.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Driving through an apartment complex, Officer Jeffrey Pittman pulled up beside Mason and his female companion and asked if they would be willing to talk with him.[1]  After they said "sure," Mason agreed to allow Pittman to search him, and Pittman found methamphetamine in a cigarette pack in Mason's pocket.  Police found more methamphetamine in Mason's wallet after he was arrested.

¶3        The State charged Mason with one count of possession or use of dangerous drugs, a Class 4 felony.  *See* Arizona Revised Statutes ("A.R.S.") section 13-3407(A)(1) (2020).[2]  Mason moved to suppress the methamphetamine, and the superior court denied the motion after a hearing.  At trial, the jury found Mason guilty as charged.  The superior

---

[1]        Upon review, we view the facts in the light most favorable to sustaining the jury's verdict and resolve all inferences against Mason. *State v. Gurrola*, 219 Ariz. 438, 439, ¶ 1, n.1 (App. 2008).

[2]        Absent material revision after the date of an alleged offense, we cite the current version of a statute or rule.

court sentenced Mason as a category-three offender to a presumptive term of ten years, with 1,489 days of presentence incarceration credit.

¶4          Mason timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) (2020), 13-4031 (2020) and -4033(A)(1) (2020).

## DISCUSSION

### A.          Issues Raised in Supplemental Brief.

#### 1.          Legal principles.

¶5          In his supplemental brief, Mason raises several challenges to the superior court's ruling on his motion to suppress. He argues the court misstated the law in its ruling and erred by denying his motion because Pittman illegally seized the drug, Mason's consent was involuntary and Pittman exceeded the scope of Mason's consent.

¶6          "We review the denial of a motion to suppress evidence for abuse of discretion, considering the facts in the light most favorable to sustaining the ruling." *State v. Weakland*, 246 Ariz. 67, 69, ¶ 5 (2019) (citation omitted). We defer to a superior court's factual findings absent clear error, *State v. Herrera*, 183 Ariz. 642, 648 (App. 1995), considering only the facts presented at the suppression hearing, *State v. Blackmore*, 186 Ariz. 630, 631 (1996). "We review questions of law de novo." *State v. Richter*, 245 Ariz. 1, 4, ¶ 11 (2018).[3]

#### 2.          Evidence at the suppression hearing.

¶7          Pittman testified at the hearing that, while on a routine patrol and without emergency lights or siren, he stopped his car near Mason and his companion in an apartment complex and asked if they would talk to him. The duo agreed, and Pittman asked for their identification, which they provided. Pittman ran a "records check" and found outstanding felony warrants for Mason's companion, but none for Mason. Pittman arrested the companion and then, before returning Mason's identification, asked if Mason "had anything on him that [Pittman] needed to be concerned about." Mason responded that "he didn't have any weapons on him." Pittman then asked "if [he] could search him," and Mason answered, "Yes."

---

[3]          We deny Mason's renewed request to strike his counsel's brief and accept his as an opening brief.

¶8        While patting Mason down, Pittman felt something in his right-front pocket, and Mason volunteered, "those are my smokes." Before removing anything from the pocket, Pittman asked "if [he] could look at them and [Mason] said yes." Pittman then removed and opened two cigarette packs, one of which contained the methamphetamine. Pittman testified he used no physical force, nor did he draw his gun or threaten Mason with a search warrant to obtain consent.

¶9        Mason offered a different version of events at the hearing. He testified Pittman turned on his emergency lights as he approached and that after Pittman detained Mason's companion, he asked Mason, "Can I pat you down for weapons to check to make sure you don't go around the corner and come back and shoot me because we're arresting your girlfriend[?]" According to Mason, he agreed only to allow Pittman to pat him down for weapons. He testified that during the pat-down, Pittman pulled out the cigarette pack and asked to look inside. Mason testified he objected, but Pittman nevertheless opened the pack, slammed Mason against the hood of the police car and arrested him.

¶10        After the hearing, the superior court denied the motion to suppress, finding the encounter consensual and the searches legal. The court later denied Mason's motion to reconsider its ruling.

### 3.        The superior court's statement of law.

¶11        Mason first argues the superior court misstated the law in its suppression ruling. An error of law in reaching a discretionary conclusion is an abuse of discretion. *Romer-Pollis v. Ada*, 223 Ariz. 300, 302, ¶ 12 (App. 2009). In its ruling, the court here stated, "[I]t's uncontroverted that police may search for weapons . . . even [in] a consensual encounter for their safety. There's no argument that they can't. Even the defendant acknowledged this consent to search for weapons."

¶12        In his argument, Mason relies on *State v. Serna*, 235 Ariz. 270, 271, ¶ 1 (2014), which held that even if an encounter begins as a consensual one, "an officer must have reasonable suspicion that criminal activity is afoot before frisking the individual." But *Serna* is distinguishable. In that case, an officer called out to the defendant, who then walked toward the officer. *Id.* at 272, ¶ 3. The officer noticed a bulge in the defendant's waistband and asked if he had any firearms, and the defendant said he had a gun. *Id.* "The officer then ordered [the defendant] to put his hands on his head and removed the gun." *Id.*

¶13          In contrast to *Serna*, during what began as a consensual encounter, Pittman asked if he could search Mason, who answered "yes." There was no contention in *Serna* that the defendant there was asked to consent to a search.  *See id.* at 276, ¶ 27.  Regardless of the statement by the superior court here about the right of an officer to search for weapons during a run-of-the-mill "consensual encounter," the court correctly stated that when a person consents to a search of his or her person for weapons, the officer may perform such a search.  *See id.* at 272, ¶ 8 (citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991)).  And the court did not err by merely acknowledging a fact the parties agreed on – that Mason had, at the very least, consented to a weapons search.  *See supra* ¶¶ 7, 9.

### 4.          Purported seizure before consent.

¶14          Mason next argues that because Pittman impermissibly detained him before he acquiesced to any search, the searches and ultimate seizure of the drug violated the Fourth Amendment.  Because Mason failed to raise this argument before the superior court, he has "forfeited review except for fundamental, prejudicial error."  *State v. Salcido*, 238 Ariz. 461, 465, ¶ 16 (App. 2015).

¶15          On this record, the superior court did not commit fundamental error by failing to *sua sponte* suppress the methamphetamine on a ground neither party raised, developed or argued.  The suppression hearing and ruling focused on the factual issue of whether Mason had consented to Pittman's searches, not on whether Pittman illegally detained Mason for purposes of the Fourth Amendment by retaining his identification before asking for consent to the search.  Although Mason introduced some evidence at the suppression hearing pertinent to the argument he makes now, when he failed to raise the issue before the superior court, he deprived the State of the opportunity to develop critical facts bearing on the purported detention.

¶16          Whether a person was seized for purposes of the Fourth Amendment depends on whether a reasonable person would have felt free to leave under the totality of the circumstances.  *State v. Childress*, 222 Ariz. 334, 338, ¶ 11 (App. 2009) (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).  For that reason, a challenge to evidence on that ground cannot be reviewed in the absence of a ruling on the issue by the superior court based on a full factual record.  *See State v. Cook*, 170 Ariz. 40, 58-59 (1991) (appellate court will not engage in fundamental-error review of superior court's failure to suppress testimony by witness whose plea agreement required him to testify when defendant raised issue for first time on

appeal). For the same reason, we will not address Mason's argument, made for the first time in his supplemental brief, that the original stop and request for identification violated Article 2, Section 8, of the Arizona Constitution because Pittman lacked a reasonable suspicion of illegal conduct.

¶17     Because we decline to consider Mason's argument that he was illegally detained before Pittman asked his consent to search, we need not consider Mason's related contention that his consent to the subsequent search was not sufficiently attenuated to avoid exclusion.

### 5.     Voluntariness of consent.

¶18     Mason also argues his consent to Pittman's search of his person and the cigarette packs was involuntary. Although Mason failed to explicitly make this argument before the superior court, when the State relies on consent to justify a warrantless search, it has the burden of proving the consent was voluntary. *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). "Voluntariness is assessed from the totality of the circumstances." *State v. Butler*, 232 Ariz. 84, 87, ¶ 13 (2013) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)).

¶19     Based on the evidence the State presented at the suppression hearing – that Pittman neither used lights or sirens, drew his gun, used physical force, nor threatened Mason before obtaining his consent, and that Mason had many prior encounters with police – the State carried its burden of proving Mason voluntarily consented to the searches. Though Pittman retained Mason's identification and arrested his companion before asking for Mason's consent to search him, these facts by themselves did not render Mason's consent involuntary under the totality of the circumstances. Mason also argues Pittman's purported statement to the effect that Mason might "go around the corner and come back and shoot [him]" coerced his consent by "implying officer safety," but the superior court was free to discredit Mason's disputed testimony that this occurred. *See State v. Alvarado*, 158 Ariz. 89, 92 (App. 1988) ("It is for the trial court to resolve conflicting testimony and to weigh the credibility of witnesses."). Moreover, the record does not support Mason's contention that the superior court "did not make any ruling on voluntariness." By denying the motion to suppress, the court implicitly found that he voluntarily consented to the searches. *Cf. State v. Hardy*, 230 Ariz. 281, 289-90, ¶¶ 32, 42 (2012) (superior court "implicitly" found evidence was not unduly prejudicial when it decided to admit it).

### 6. Scope of consent.

**¶20** Finally, Mason argues Pittman exceeded the scope of Mason's consent by searching inside the cigarette pack after Mason consented only to a pat-down for weapons. *See State v. Paredes*, 167 Ariz. 609, 612 (App. 1991) ("The scope of a consensual search is limited to the scope of the consent given."). Although Mason testified he objected when Pittman asked to look inside the cigarette pack, Pittman testified Mason consented to a general search, volunteered "those are my smokes" during the pat-down, then further consented after Pittman asked if he could look at the cigarettes. *See supra* ¶¶ 7-9. By finding the search was legal, the superior court credited Pittman's testimony over Mason's, and we defer to its factual findings, including its implicit finding that Mason consented to a request by Pittman to open the cigarette packs to allow him to look inside. *See Alvarado*, 158 Ariz. at 92. Because the evidence viewed in the light most favorable to upholding the ruling shows Pittman did not exceed Mason's scope of consent, no error occurred.[4]

### B. Due-Process Review.

**¶21** The record reflects Mason received a fair trial. He was represented by counsel at all stages of the proceedings against him except at sentencing, at which the superior court found Mason knowingly, intelligently and voluntarily waived his right to counsel and permitted him to proceed *pro per* with advisory counsel. Mason was either present at all critical stages or his counsel waived his presence. The court held appropriate pretrial hearings, and Mason did not request a voluntariness hearing. *See State v. Bush*, 244 Ariz. 575, 590, ¶ 61 (2018).

**¶22** The State presented both direct and circumstantial evidence sufficient to allow the jury to convict. The jury was properly comprised of eight members. The court properly instructed the jury on the elements of the charges, the State's burden of proof and the necessity of a unanimous verdict. The jury returned a unanimous verdict, which was confirmed by juror polling. The court received and considered a presentence report, addressed its contents during the sentencing hearing and imposed a legal sentence for the crime of which Mason was convicted.

---

[4] Mason also raises, but does not argue, three issues "to preserve them for future proceedings." We do not address them here. *See* Ariz. R. Crim. P. 31.10(a)(7); *State v. Fitzgerald*, 232 Ariz. 208, 217, ¶ 51, n.6 (2013).

**CONCLUSION**

**¶23** We have reviewed the entire record for reversible error and find none, and therefore affirm the conviction and resulting sentence. *See Leon*, 104 Ariz. at 300.

**¶24** Defense counsel's obligations pertaining to Mason's representation in this appeal have ended. Counsel need do no more than inform Mason of the outcome of this appeal and his future options, unless, upon review, counsel finds "an issue appropriate for submission" to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). On the court's own motion, Mason has 30 days from the date of this decision to proceed, if he wishes, with a *pro per* motion for reconsideration. Mason has 30 days from the date of this decision to proceed, if he wishes, with a *pro per* petition for review.[5]



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[5] We deny as moot Mason's "Motion to Stay Direct Appeal Pending Special Action," filed December 23, 2019.